STATE v. SMITH.

(Filed May 23, 1905.)

*Rape—Confessions—Privileged Communications—Attorney*
  *·in Fact—Harmless Error—Question for Jury.*

1.  In an indictment for rape, error, if any, in admitting a voluntary
    declaration of the prisoner that if he ever got out of this scrape,
    he would never get in jail again; that when he left jail before
    he did not intend to get back; that he was in jail three years ago
    for killing a girl, was harmless.

2.  An objection that the prisoner was in the custody of an officer
    when a declaration, which was offered in evidence, was made, is
    untenable, there being no evidence whatever of inducement or
    force.

3.  An objection to the introduction of declarations of the prisoner
    made to a man who afterwards acted as his attorney in fact
    before the committing magistrate is without merit.

4.  The rule as to privileged communications extends only to such con-
    fidential communications as are made to the attorney by virtue
    of his professional relation to the client.

5.  In an indictment for rape a request to instruct the jury that the
    failure of prosecutrix to make outcry was "strong" evidence to
    discredit her, was correctly modified by omitting the word
    "strong," it being for the jury to determine what strength or
    weight they will give to it.

INDICTMENT again Peter Smith for rape, heard by *Judge
Fred Moore* and a jury, at the February Term, 1905, of the
Superior Court of MADISON County. From a verdict of
guilty and judgment thereon, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the prisoner.

BROWN, J. The prosecutrix, about fifteen years of age,

lived with her father on Spring Creek, in Madison County. On the night of November 8, 1904, according to her testi mony, she went out of the house, where she resided, and remained about five minutes, and had started back when the prisoner seized her and said he was going to take her to Garfield Suttles'. The prosecutrix said she would call her father, whereupon prisoner put his arm around her waist and his hand over her mouth and forced her to go along with him. Without rehearsing the details, revolting and brutal in the extreme, the evidence tends to show that prisoner made the prosecutrix go with him through the fields and woods for about two miles. He then, notwithstanding her resistance and efforts to flee, forced her to submit to him. They then went on to the ford above one Jesse Slagle's, and the prisoner required her to yield to him again and again. The prisoner was armed with a gun and repeatedly threatened to kill prosecutrix.

A witness for the State (Mayo Reeves), testified that he and one Wells were hunting above Jesse Slagle's on the night of the occurrence. Their dogs were running and barking on the mountain side and they sat down to wait. They heard a woman "hollering" and in two or three minutes Eva Suttles, the prosecutrix, came running up and said that Peter Smith was up there trying to kill her. She wanted to be taken home, but witness took her to Jesse Slagle's, where she spent the night and related the circumstances of the assault. There was abundant evidence tending to corroborate the prosecutrix. Her testimony discloses a case of such unparalleled brutality upon the part of the prisoner that we have been more than cautious to see that natural indignation does not sway our judgment in passing upon his rights. We have therefore subjected the record to the closest scrutiny.

1st Exception. L. S. Plemmons, a witness for the State, testified that he had the prisoner in custody, made no threats, offered to inducements; that prisoner, on the way to the jail,

STATE *v.* SMITH.

voluntarily stated to witness that "If he ever got out of this scrape he never allowed to be guilty of being back in jail again; that when he left jail before he never aimed to be back; that he was in jail three years ago for killing a girl." If it was erroneous to admit this declaration of the prisoner, it was harmless error. It did not tend to prove or disprove the charge in the indictment. It was an expression as to what he intended to do in the future and not a recital of what he had done in the past. We are unable to see how it could have seriously influenced the jury in passing upon the guilt of the prisoner. The exception is without merit.

2nd Exception. The prisoner objected to the testimony of Jasper Ebbs, who testified to certain declarations of prisoner to Ebbs, upon the ground that Ebbs was his *"attorney in fact,"* and that the statements were made to Ebbs on the day of the preliminary examination before the Justice of the Peace, and on the day before. After these declarations were made to Ebbs, it appears that prisoner's father asked Ebbs to do what he could for prisoner, and prisoner at the same time made the same request. Ebbs promised that he would. The objection of prisoner is stated in the following language: "That being in the custody of an officer and having made the declarations as testified to by the witness to a man to whom he had gone for advice and help, and who afterwards acted as his attorney *de facto* in the examination before the Justice of the Peace, such declarations made under such circumstances are not admissible." The objection that prisoner was in the custody of an officer when the declaration was made is untenable, there being no evidence whatever of inducement or force. This has been repeatedly held· in this State. Neither can the objection be sustained on the other ground. The declarations were made before the relation existed and had Ebbs been an attorney at law, the prisoner could not deprive the State of such important evidence by "retaining" the witness. The relation of client and attorney

at law did not exist at any time between Ebbs and prisoner. Ebbs may have acted as his adviser before the trial before the Justice of the Peace, but he had no legal right to appear as prisoner's attorney in any court in this State, and there is no evidence that he did. Courts will not extend the rule as to privileged communications. "As the rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy that gave birth to it." 23 Am. & Eng. Enc. (2nd Ed.), p. 71. The rule extends only to such confidential communications as are made to the attorney by virtue of his *professional* relation to the client. 23 Am. & Eng. Enc. (2nd Ed.), p. 72. The exception is overruled.

The third exception is to the charge. It was contended by the prisoner that the prosecutrix failed to make "outcry" at the time of the assault and made none at any time during the night. The court was asked to instruct the jury that if this was true it was a *strong* circumstance against the truth of her statement. The court gave the instruction in the words of the prayer omitting the word "strong." In this His Honor was correct. In this country the law is well settled and it is uniformly held that failure upon the part of the victim to make outcry or immediate disclosure of the outrage is to be considered as *tending* to show consent on her part. 23 Am. & Eng. Enc. (2nd Ed.), p. 862. It is a material fact when proven to be weighed and considered by the jury, but the weight or strength to be given to it is for the jury and not the judge to determine. The early English writers, Hale and East, in referring to failure to make outcry or complaint, use the words "strong presumption," "strong circumstance," etc. Hale, P. C., 633. Blackstone and Russell follow them. It has always been the custom of English judges to advise jurors as to the weight to be given to certain evidence and to comment upon the evidence and the facts. Under our statute this is forbidden. The judge was asked to instruct

the jury as a *rule of law* that failure to make outcry is *strong* evidence to discredit the prosecutrix. There is no such rule of law in this State. It is for the jury to determine what weight they give to it, and then each case must depend upon the circumstances and facts proven. The identical question is set at rest by *Chief Justice Pearson* in *Cone's case,* 46 N. C., 20, and again in *Peter's case,* 53 N. C., 19.

A minute examination of the record shows that the prisoner has been fairly tried by an able and unusually painstaking judge and has been convicted upon evidence that leaves no reasonable doubt of his guilt. He fully deserves the penalty he must pay for the shocking crime he has committed.

No Error.