The DUPLAN CORPORATION,
Plaintiff,

v.

DEERING MILLIKEN, INC., et al.,
Defendants.

DEERING MILLIKEN RESEARCH COR-
PORATION, Plaintiff,

v.

The DUPLAN CORPORATION and Bur-
lington Industries, Inc., Defendants.

The DUPLAN CORPORATION et al.,
Plaintiffs on the Counterclaim,

v.

DEERING MILLIKEN RESEARCH COR-
PORATION, Defendant on the
Counterclaim,

and

Deering Milliken, Inc., et al., Additional
Defendants on the Counterclaim.

Civ. A. Nos. 71–306, 70–968, 69–1096, 68–
705, 69–777, 70–14, 70–189, 70–250, 70–
295, 70–358, 70–385, 70–386, 70–391, 70–
493, 70–622, 70–628, 70–677, 70–683, 71–
87 to 71–102, 71–115, 71–126, 71–127 and
71–283.

United States District Court,
D. South Carolina,
Spartanburg Division.
May 30, 1972.

See also, D.C., 370 F.Supp. 769, 334 F.Supp. 703; 353 F.Supp. 826, affirmed, 4 Cir., 487 F.2d 459, 1973, cert. denied, —— U.S. ——, 94 S.Ct. ——, 39 L.Ed.2d ——, 61 F.R.D. 127, reversed, 487 F.2d 480.

762

Fletcher C. Mann, Leatherwood, Walker, Todd & Mann, Greenville, S. C., Charles B. Park, III, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., Anthony F. Phillips, Willkie, Farr & Gallagher, New York City, for United Merchants & Mfg. Inc., The Duplan Corp., The Schwarzenbach-Huber Co., Jonathan Logan, Inc., Frank Ix & Sons Va., Corp., Lawrence Texturing Corp., Burkyarns, Inc.

Edward P. Perrin, Perrin, Perrin & Mann, Spartanburg, S. C., David Rabin,

McNeill Smith, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for Texfi Industries, Inc., Blanchard Yarn Co., Reliable Silk Dyeing Co., Dixie Yarns, Inc., Tex-Elastic Corp., Hemmerich Industries, Spring-Tex, Inc., Olympia Mills, Textured Fibres, Virginia Mills, Inc., Throwing Corp. of America.

Thomas A. Evins, Butler, Means, Evins & Browne, Spartanburg, S. C., Jay Greenfield, Simon H. Rifkind and David J. Brody of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Deering Milliken, Inc., and Deering Milliken Research Corp.

Rufus M. Ward, Ward, Howell & Barnes, Spartanburg, S. C., Granville M. Brumbaugh of Brumbaugh, Graves, Donohue & Raymond, New York City, for Moulinage et Retorderie de Chavanoz, Ateliers Roannais de Constructions Textiles, (ARCT, France).

R. Hoke Robinson, Thomas T. Moore, Robinson, McFadden & Moore, Arthur O. Cooke, Cooke & Cooke, Greensboro, N. C., for ARCT, Inc.

W. Francis Marion, O. G. Calhoun, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., John W. Malley, Wm. K. West, Jr., of Cushman, Darby & Cushman, Washington, D. C., for Burlington Industries, Inc., Madison Throwing Co., Inc., Leon-Ferenbach, Inc., National Spinning Co., Inc.

HEMPHILL, District Judge.

In this multidistrict litigation pursuit of discovery has reached a temporary impasse on a Rule 34 [1] request launched by the Duplan Corporation,[2] and associated litigants, called plaintiffs for the

---

[1]. Rule 34, Federal Rules of Civil Procedure reads in part:

Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control;

[2]. The Duplan Corporation and certain other litigants having an alleged common cause, are known as "Throwsters", because the textiles they manufacture or process are those having a twisted yarn. Webster defines a throwster as "one who throws or twists silk."

purpose of further identification herein. On November 1, 1971, plaintiffs filed a Rule 34 request on each ARCT[3] (France) and Chavanoz;[4] these requests were extensive and request various categories of documents of each of the defendants pursued. Among the requests was one numbered 17[5] which requested:

17. Each document which refers to, reflects upon, or in any way relates to, and which was received from or went to any of the following:

(k) Leo Soep

(z) Michael Laurent

Numbers of documents have been produced in most of the categories named in the request, and some have been produced as to Leo Soep and Michael Laurent, but a claim of privilege, as between Soep and/or Laurent and the pursued defendant as client has brought this discovery effort to a halt and demands a decision by this court.

Originally, plaintiffs had signified an intention to depose Mr. Soep in Paris, or elsewhere in France because the condition of his health forbid distant travel. Also, defendants are French companies, and access to records or notes would be enhanced by stalking the witness in his business bailiwick. There arose no serious opposition to the taking of the deposition there, but counsel, and court, envisioned facility in completing certain discovery in the United States before repairing to France. While the American discovery was in progress, misfortune intervened, and the court was advised of the untimely demise of Mr. Soep.[6] Mr. Laurent, who is claimed to be an attorney for ARCT is alive and present indications evidence an intent to depose him.[7]*

Certain papers of Mr. Soep were returned by him to his clients when heart surgery was imminent.[8] Subsequent to the death of Mr. Soep, this court requested of counsel[9] that the widow and fiduciaries of the late lamented be contacted and asked to preserve the papers of the deceased [the court realized its entire lack of any jurisdiction over any papers held by the widow or the fiduciaries of the estate]. Counsel graciously complied and there now exist certain papers of Mr. Soep either in the hands of the present targets of the Request, or in the hands of others; the availability is not the issue; privilege is the issue.

It is to be remembered that the throwsters have charged DMI, DMRC, Chavanoz, ARCT-France, Whitin and

---

3. Ateliers Roannais de Constructions Textiles.

4. Moulinage et Retorderie de Chavanoz.

5. Thirty-five different categories were pursued in a voluminous document of 13 single-spaced typewritten pages.

6. It should be noted that in one of the hearings on Rule 34 requests, Mr. Brumbaugh, of counsel for defendants stated:
"And insofar as documents that have been returned to Mr. Laurent, who is now representing ARCT-France, we will not assert privilege with respect to exchanges between Mr. Soep and DMRC." (Deering-Milliken Research Corporation, an American defendant who did not claim Soep was working for it.)

7. At the same hearing, as to Mr. Laurent, the following colloquy occurred:
The Court: Let's put the issue right out in the open now. If Mr. Laurent, under the set practices of France, occupied the same position as a house counsel would here, what is your position?
Mr. Bell: We would have no quarrel.

* This court has presided over all depositions thus far and has been requested to preside in those scheduled in the future, in the United States and elsewhere.

8. As to these papers the following colloquy occurred:
MR. SMITH: The other point, Mr. Brumbaugh advises us Mr. Soep's papers have been returned to his respective clients, or the people he represented, and I would ask Mr. Topkis whether or not Mr. Brumbaugh's offer to turn over the Soep papers as they were returned to ARCT, would also apply to the Soep papers as returned to Chavanoz or any of its companies?
MR. TOPKIS: With the exception of any which privilege might be claimed, of course.

9. Mr. Brumbaugh.

ARCT, Inc. (ARCT-France's majority-owned American subsidiary) with combining and conspiring to restrain and to monopolize interstate and foreign commerce in the importation, sale and distribution of FT machines, FT processes and FT technology in violation of Sections 1 and 2 of the Sherman Act by, among other means, (1) controlling the exportation of ARCT FT machines from France and their importation into the United States, (2) regulating the licensing of Chavanoz' FT technical processes, (3) creating and maintaining a regimented distribution system for Chavanoz' FT technology and ARCT's FT machines which DMRC and Chavanoz camouflaged with an unlawful patent use-licensing system and (4) entering into collusive arrangements whenever necessary to achieve their common plan. These "means" are borne out by the FT spindle episode.

Defendants contend that the relationship between ARCT and Chavanoz, respectively, with Soep and Laurent, support the claim of privilege. Judgment on this issue as to Laurent can await his deposition; there is no reason the documents cannot be in possession of counsel at the deposition and/or available to the court for *in camera* inspection then or later. As to the Soep documents, the problem is immediate.

Initially, the court is confronted with the obvious, whatever relations Mr. Soep had, they were initiated in France, and there is no dispute but that

> Throughout the period during which Mr. Soep and Mr. Laurent served as conseil en brevets to ARCT France, all communications with them were for the purpose of seeking their advice and assistance as conseil en brevets. During the course of these communications, ARCT France disclosed information to them which was of a confidential nature to ARCT France in order to obtain their profes-

sional advice. In was ARCT France's intent that this information should remain confidential.[10]

Henri Crouzet, President of ARCT-France, further declared under oath before a notary public:[11]

> It has always been my understanding that my communications with Mr. Soep and Mr. Laurent were confidential, and that a court could not compel their disclosure. Only because of this understanding did I disclose, and authorize other ARCT France personnel to disclose, confidential information to them.

Admittedly, Leo Soep, was not a lawyer in the same professional status accorded to members of the bar in this country. He had been, however, a *conseil en brevets d'invention* for over ten years prior to this litigation. If the issue here concerned an American advisor on patents, or under certain circumstances, patent counsel, there would be no question but that ARCT could not claim privilege as to those Soep communications it has in possession, or accessible. In NLRB v. Harvey (C.C.A. 4 1965) 349 F.2d 900, 904, the court adopted Wigmore's statement of the essentials of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

and quoted with approval the definition of privilege as stated in United States v. United Shoe Machinery Corp. (D.Mass. 1950), 89 F.Supp. 357, 358:

> * * * The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client;

---

10. From the affidavit of Henri Crouzet, dated 18 February 1972. No rebuttal to this statement is in the record.

11. Ibid.

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Wigmore also explains:

2300. Persons having legal knowledge, but not admitted to practice. (1) There is no ground for encouraging the relation of client and legal adviser except when the adviser is one who has been formally admitted to the office of attorney or counselor as duly qualified to give legal advice.

That the person consulted is in fact practicing, without formal sanction of the court, is certainly not sufficient. [8 Wigmore, Evidence—Rev.1961]

This court is not dealing with an attorney-client relationship established by parties in the United States. The client and the advisor, whether he be considered as an attorney, or other, are French. Soep, in France, occupied the status of "conseil en brevets d'invention," also called "ingénieurs conseils en propriété industrielle", as defined by Article 842 of the Code Civil of the Republic of France (decree 65–921 of 29 October 1965) which provides in part:

Any person included in a national list made by the minister responsible for industrial property according to the conditions set out below and who, to the exclusion of any industrial, commercial or financial activity or operation, normally offers his services to the public in order to advise, assist or represent interested parties in dealing with the national institute of industrial property with a view to the issue of patents, or to offer assistance in France with a view to the grant of patents in other countries, may claim the title of "conseil en brevets d'invention."

Soep was not an "avocat à la Cour", as contemplated by French law.[12] His client cannot therefore claim the almost absolute privilege accorded the communication under French law. The court must examine in the light of his actual status.

The plaintiffs submitted affidavits of various self-acclaimed experts on the subject, to persuade this court that the communications are not privileged. Rita E. Hauser, Esquire,[13] who stated unequivocally "that said Leo Soep was not an attorney-at-law and communications between him and his former employers and/or clients are not subject to any privilege whatsoever." She argues in her affidavit that no decree, including the one establishing "conseil en brevets d'invention", provide for professional secrecy to such status. Her opinions have been given due consideration by this court.

An affidavit of Jaques Mansean, Paris lawyer[14], states

Members of the Bar are entitled and required to maintain professional secrecy and not only can they not be required to testify in respect of mat-

12. Article 41 of the Decree (of the Ministry of Justice of France) of April 10, 1954, as amended, and the regulations of all regional bars in France, specifically prohibit an *avocat* [lawyer] from divulging the contents of oral or written communications between him and his client and, additionally, an *avocat* is held to treat all such communications as a "professional secret" not to be divulged to anyone without the express consent of the client. [Affidavit of Rita Hauser, Esquire, submitted by Throwsters].

13. Member of the New York and D. C. Bar, graduate of the Law Faculty of the University of Paris, holding a *license en droit* (Bachelor of Laws in United States).

14. He holds "the degree of License en Droit and two diplomas d'Etudes Superierves en Droit Public et de Science Politique", and teaches at the University of Paris Law School.

ters relating to their relationships with clients, but papers in their office or when carried out of their office are not subject to search or examination.

A conseil de brevet is not a member of any bar and does not have any of the obligations or privileges of a member of any bar. A conseil de brevet is also not a member of any legally organized profession and is not subject to the rules or disciplinary action of any such organization. In this respect he differs from the avoué and notaire who belong to organizations created by law. Until 1965, any person could hold himself out as a conseil de brevet and act in such capacity. Decree no. 65.921 dated October 29, 1965 set out certain educational and other requirements for functioning, as a conseil de brevet, although an exception was made for those already exercising this calling. Neither the decree referred to nor any other law has required secrecy by the conseil de brevet or has granted a privilege to his communications.

Another affidavit of Pasquale J. Federico [15], deals in generalities as to the patent practice in the United States and abroad but does not deal specifically with the Soep question. An affidavit of Denis Debost [16] relies on the "narrow obligation of the members of certain professions to preserve the secrecy of certain confidential communications, as sanctioned by Article 378 of the French Penal Code," [17] and argues that since *conseil en brevets d'invention* are a species excluded from the application of Article 378. He points out that, "even as regards the professions and offices to which Article 378 applies, the members thereof are bound to secrecy only to the extent that the allegedly confidential communication was made to them in the exercise of such profession."

Chavanoz and ARCT France have not maintained that the documents are privileged because Mr. Soep held the title of *conseil en brevets*. They concede that in those instances where Soep was engaged to give other than legal advice, *i. e.* business advice, advice as negotiator or attorney-in-fact, the attorney-client privilege could not attach.[18] They do claim privilege with respect to those documents where Chavanoz and/or ARCT France sought or obtained professional legal advice from Soep. In support of their claim they submit an affidavit of Zinna Weinstein.[19] Attorney Weinstein knew Mr. Soep. He states unequivocably that French law does not permit the inclusion of any claims in patent applications and/or pursuit and that:

Thus, in preparing an application for a French patent, the work of the "Conseil en Brevets d'Invention" was primarily to make a full disclosure of the invention from a technical standpoint. He was not concerned with drafting claims defining the legal scope of the patent.

Upon the application for patent being filed in the French Patent Office in proper form, it was issued or registered in due course without any examination as to novelty or patentability and without any necessity of prosecution by the "Conseil en Brevets d'Invention".

15. Member of the bar of D.C.—patent consultant. Lecturer on domestic and foreign patent law.

16. Avocat à la cour d'appel de Paris, graduate of Harvard Law School.

17. Which reads:
Doctors, surgeons and other health officers, as well as chemists, midwives and all other persons who are depositaries, by their condition or profession or by temporary or permanent duties, of secrets which are entrusted to them, who, except in cases where the law obliges or authorizes them to be informers, shall have revealed such secrets, shall be punished by imprisonment of one month to six months and by a fine of 500 F to 3,000 F.

18. They claim production of scores of documents as to which privilege is waived. Plaintiffs say they are holding back and are delaying awaiting this ruling.

19. Graduate of University of Paris as Bachelor of Physics, Bachelor of Mathematics, Bachelor of Engineering and Bachelor of Laws. Author of publication on French patent law.

The legal scope or coverage of a French patent is not determined by the Patent Office, but only by a Court in the event the patent is litigated. In such a Court action, handled by an Avocat, the patentee is allowed to claim as his invention everything mentioned in his specification.

As a consequence the main burden of a "Conseil en Brevets d'Invention" was to make a clear description and showing of the invention.

Another supporting affidavit is that of Henri Monerray[20], who states, among other things:

In French civil and commercial litigation, there is no pre-trial discovery procedure under which a party is compelled to produce documents to its adversary. Even during the trial there is very limited forced production of documents, and only in situations expressly covered by law. None of the laws pertaining to forced production of documents in civil and commercial litigation apply to actions for patent infringement or for breach of a patent license agreement.

Even in those civil and commercial cases where there is forced production of documents, members of an independent profession are prohibited by law from revealing any secret entrusted to them by a client. A "conseil en brevets" is bound by this duty of professional secrecy and is not permitted to testify in civil or commercial litigation about his confidential communications with his clients.

and

In the course of his duties, a "conseil en brevets" is entrusted by his client with information whose confidential character is of importance for the client. According to French law, the "conseil en brevets" is bound by professional secrecy as to such information, and confidential communications between the "conseil en brevets" and his client are privileged evidence.

■ This litigation is no different from any other in that the search for truth[21] is the object of all process including discovery. This begats a confrontation where the search for truth is met by the claim of privilege. The court is reminded that a privilege must be taken with the limitations placed upon the manner of its exercise. Stilson v. United States (1919) 250 U.S. 583, 587, 40 S.Ct. 28, 63 L.Ed. 1154, 1157. And, insofar as the privilege between attorney and client is considered, the privilege takes flight if the relation is abused. Clark v. United States (1932) 289 U.S. 1, 13, 53 S.Ct. 465, 77 L.Ed. 993, 1000, and the recognition of a privilege does not mean that it is without conditions or exceptions (*Clark*, supra).

■ The attorney-client privilege is the oldest recognized privilege for confidential communication. It goes back to the reign of Elizabeth I[22], as it was early acknowledged that "the first duty of an attorney is to keep the secrets of his client[23]." This was probably an outgrowth of "honor among gentlemen", which flourished in earlier times, but gradually yielded to the demands of courts as the latter gained integrity. Originally, the privilege was the attorney's, and not that of the client[24], but today it is undisputedly the client's and not the attorney's.

---

20. "An Avocat à la Cour d'Appel de Paris." I, hold the degree of Doctor en Droit and have been a Chargé de Conférences at the Faculté de Droit de Paris."

21. The court is reminded of the language of Mr. Justice Harlan in Moulor v. American Life Ins. Co. (1884), 111 U.S. 335, 345, 4 S.Ct. 466, 28 L.Ed. 447: In one sense, that only is true which is conformable to the actual state of things. In that sense a statement is untrue which does not express

things exactly as they are. But in another sense, "true" is often used as a synonym of that which is honest, sincere, not fraudulent."

22. 8 Wigmore Evidence § 2290, citing Besel v. Lovelace (Ch. 1577) 21 Eng.Rep. 33.

23. Taylor v. Blacklow (1836), 132 Eng.Rep. 401, 406.

24. Wigmore § 2321.

Counsel for the Throwsters cited Radio Corporation of America v. Ranland Corp. (N.D.Ill.1955), 18 F.R.D. 440, which is authority for the rule that:

> The attorney-client privilege does not extend to communications between directors, officers, or agents of different corporations, or to negotiations between such corporations which are made or conducted by men who happen to be members of the bar.

and

> The privilege is designed to secure objective freedom of mind for the client in seeking legal advice. [Wigmore § 2291] It has no concern with other persons' freedom of mind, nor with the attorney's own desire for secrecy in the conduct of a client's case.

If the court is to follow the ruling in that case and the advice of Wigmore that "obviously, much depends upon the circumstances of individual transactions," [25] the rules following will apply.

■■■ As to those communications between Leo Soep and either Chavanoz or ARCT France, or both, the subject of which is any United States Patent; except when giving advice to client's counsel in the preparation and/or conduct of litigation before courts of record, or when acting in a capacity equal to patent house counsel in the United States; or patent application, any licensing agreement with or to any United States person, firm, or corporation, any communication which was published or sent to any third party in the United States, or concerning any conference in the United States, except where trade secrets are involved, shall be produced by Chavanoz and ARCT France. One who does business in the United States must be subject to the laws of the country. Under the decisions of United States Courts, Leo Soep, not an attorney, does not place over his client, foreign or domestic, any umbrella of protection. The fact that he may have in fact been acting in the capacity of attorney is not sufficient to qualify the communication.[26] Any belief by Chavanoz or ARCT France that Mr. Soep occupied the same status as an attorney in this country would not suffice.[27]

■■■ As to those communications between Leo Soep and the respective clients, in France, and which reflect that the communication rested in whole or part on the client's belief that the communication was confidential, secret or privileged, on the record before the court they are held to be qualified. This does not include technical information and other information such as commercial information; trade secrets are excluded from production, however.

If counsel desire, this court is available for limited *in camera* inspection of the Soep documents, where doubt exists. This can only be accomplished if a translation accompanies the document. In addition, counsel are invited to provoke discussion of this order by resort to Rule 59(e) Federal Rules of Civil Procedure, by first reducing to writing all requests or motions under the rule.

The plaintiffs' Rule 34 requests are granted, subject to the limitations hereinabove.

And it is so ordered.

---

25. Citing Mutual Life Ins. Co. v. Selby (C. C.A.9 1896), 72 F. 980; In re Fisher (S.D. N.Y.1931), 51 F.2d 424, 425, United States v. Vehicular Parking, Ltd. (D.Del.1943), 52 F.Supp. 751, 753, 754; United States v. Shoe Machinery Corp., [supra]; United States v. Rocco (W.D.Pa.1951) 99 F.Supp. 746, 748; United States v. Chin Lim Mow (N.D.Cal.1952), 12 F.R.D. 433, 444 and others.

26. See State v. Smith (1905) 138 N.C. 700, 50 S.E. 859.

27. Wigmore, supra, § 2302.