**MEAD DIGITAL SYSTEMS, INC., Plaintiff,**

v.

**A. B. DICK COMPANY and Gould, Inc., Defendants,**

**and**

**A. B. DICK COMPANY and Gould, Inc., Plaintiffs,**

v.

**The MEAD CORPORATION, Defendant.**

Nos. C-3-78-177, C-3-78-287.

United States District Court, S. D. Ohio, W. D.

Oct. 20, 1980.

Keith V. Rockey, McDougall, Hersh & Scott, Chicago, Ill., David C. Greer, Howard Krisher, Bieser, Greer & Landis, Dayton, Ohio, for A.B. Dick.

Armistead W. Gilliam, Jr., Smith & Schnacke, Charles N. Shane, Dayton, Ohio, William Durkee, Edward Goldstein, Houston, Tex., for Mead.

## DECISION AND ENTRY SUSTAINING MOTION TO COMPEL PRODUCTION OF DOCUMENT

RICE, District Judge.

The consolidated cause came to be heard upon the motion of Mead Digital Systems, Inc. (Plaintiff in 78–177) and Mead Corporation (Defendant in 78–287), referred to herein collectively as Mead, seeking an Order of the Court compelling the production of certain documents pursuant to F.R.C.P. 37(a).

These are patent actions in which Mead seeks a declaration to the effect that it has not infringed on certain patents owned by A. B. Dick Company (A. B. Dick) and Gould, Inc.; and in which, conversely, A. B. Dick and Gould, Inc. seek damages and an injunction with respect to alleged infringement on said patents by Mead.

The following facts pertinent to Mead's present motion are undisputed. The documents in question were generated by David G. Rouse, a patents advisor for a British subsidiary of General Electric Company Limited of Great Britain (G.E.C.), and were prepared in early 1979 as part of an evaluation of A. B. Dick's intellectual property position, in connection with the proposed acquisition of A. B. Dick by G.E.C. G.E.C. has since acquired ownership of all of A. B. Dick's stock through a Delaware subsidiary, but G.E.C. is not a party herein.

When Mead first sought to depose G.E.C. concerning its evaluation of A. B. Dick's patent portfolio, A. B. Dick refused the request because it had "no control" over G.E.C. which it might exercise to produce G.E.C. for deposition, and because it (A. B. Dick) believed that G.E.C.'s patent evaluations were, in any event, not relevant. Mead thereafter sought and obtained an Order of the Court authorizing the issuance of Letters Rogatory pursuant to F.R.C.P. 28(b), with the Court specifically finding that the evaluations were relevant at least for discovery purposes. *See Order* of October 25, 1979, Docket # 48. However, before the Letters issued, A. B. Dick and Mead agreed that an "accommodation" would be made whereby G.E.C. would be deposed in England, through Rouse, on January 25, 1980, without process of the British Courts.

On the day of the deposition, counsel for A. B. Dick and G.E.C. advised Mead that seven documents, otherwise within the terms of the Court's October 25 *Order*, would be withheld based on a claim of attorney-client privilege on the part of G.E.C. Those documents are the object of Mead's motion to compel discovery.

In presently seeking to have production of the documents compelled, Mead contends, primarily upon the authority of *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1975) (*Duplan* II), that the privilege (in the nature of an attorney-client privilege) which might attach to the

communications of a patent agent under British law does attach only if such communications relate to formal British patent proceedings. Although Rouse is a chartered British patent agent, the documents in question were not generated for formal British patent proceedings, and G.E.C. may, therefore, not claim that they are privileged. In all other respects, no attorney-client privilege is indicated because Rouse is not an attorney, does not have a law degree or formal legal education, and is not a registered U.S. patent agent.

In opposing compelled production of the documents, A. B. Dick contends, also upon the authority of *Duplan II, supra,* that a foreign patent agent's communications are privileged to the extent that the agent was acting in a capacity equal to patent house counsel in the United States. Since the Rouse documents were generated for G.E.C. in just such capacity, G.E.C. may claim privilege in them. Further, even if no privilege exists, A. B. Dick contends that the documents should be determined irrelevant, contrary to this Court's October 25 *Order,* because a greater degree of "relevance," than that set forth in F.R.C.P. 26(b) ("information sought appears reasonably calculated to lead to the discovery of admissible evidence"), must be demonstrated when *non-party* documentary discovery is requested.

At the outset, it appears to this Court (although not raised by either party) that the circumstances suggest an impediment to the issuance of an Order compelling production of the documents in question. One of the questions unresolved by Mead's aborted request for Letters Rogatory is whether A. B. Dick, as a party, "has control" over the non-party G.E.C. and, implicitly, over documents in the possession of G.E.C. or Rouse. If A. B. Dick does not have such control, and the documents in question have been retained by G.E.C. or Rouse (which is implicit in G.E.C.'s claim of privilege), then a request for said documents under F.R.C.P. 30(b)(5) and/or 34(a) would be improper and an Order under F.R.C.P. 37(a) could not issue for failure to respond to such request. Similarly, even if the documents in question

would ordinarily be subject to subpoenas duces tecum, issued to non-parties under F.R.C.P. 30(b)(1) and/or 45(b), (d), this Court lacks the power to issue such subpoenas in foreign countries to persons other than nationals or residents of the United States. *Cf.* 28 U.S.C. § 1783.

■ However, this Court need not presently resolve the question of A. B. Dick's "control" of G.E.C. or the Rouse documents. If A. B. Dick has such control, and it is determined that the documents are discoverable under F.R.C.P. 26 (i. e., relevant and not privileged), then an Order under F.R.C.P. 37(a) would be the appropriate means to compel production. If, on the other hand, A. B. Dick lacks the necessary "control", but the documents are nonetheless discoverable under F.R.C.P. 26, this Court would not hesitate to construe Mead's present request as a renewed motion for the issuance of Letters Rogatory under F.R.C.P. 28(b), and sustain same, in order to employ the process of British Courts in "compelling production" of the documents at issue.

■ With respect to the question of privilege, this Court concludes that Rouse's communications to G.E.C. through the documents at issue are not precluded from compelled production on that ground. There can be no doubt that if Rouse were a *domestic* patent advisor and had communicated to a *domestic* client through the documents at issue, then no attorney-client privilege could be asserted by the client because Rouse is not a member of the bar of any court. *Duplan* II at 1169; *Duplan Corp. v. Deering Milliken, Inc.,* 370 F.Supp. 761, 764–65 (D.S.C.1972) (*Duplan* I) (citing 8 *Wigmore on Evidence* §§ 2292, 2300 (1961 rev. ed.)). The result should be no different simply because Rouse is a foreign patent agent, and was communicating with a foreign client, *unless* foreign law affords a privilege to such communications which this Court might observe as a matter of comity. However, the communications of British patent agents before 1968 were uniformly *not privileged,* and the statutory privileges

established in Great Britain after that date extend only to patent agent communications *concerning formal patent proceedings before the appropriate British tribunals.* *See* The Civil Evidence Act of 1968 § 15(1); The Patents Act of 1977 § 104(4). *Cf. Duplan* II at 1170–71. Since Rouse's communications to G.E.C. do not concern pending or contemplated formal patent proceedings in England, no privilege attached to them under British law, and no privilege is available for recognition by this Court as a matter of comity.

Nonetheless, A. B. Dick suggests that the following language in the *Duplan* II opinion indicates that the Rouse documents should be privileged from compelled disclosure:

> Therefore, [the plaintiff patentholders] shall produce the following communications between any of these foreign patent agents and [plaintiffs]:
>
> > (1) communications the subject of which is any United States patent, *except which ... acting in a foreign country in a capacity equal to patent house counsel in the United States...*

*Duplan* II at 1171.

Out of context, the quoted language does appear to suggest that Rouse's communications to G.E.C. are privileged to the extent he "acted as an attorney" in offering legal opinions on the viability of A. B. Dick's patents. However, it must be noted *Duplan* II concerned privileges which might attach under both British *and French law,* and which might thereby be recognized in deference to the law of either nation. As made clear in other parts of the *Duplan* II opinion, and in the opinion in *Duplan* I (strictly concerning French patent agent privileges), the "patent house counsel" analogy is derived from *and only relates to* the significantly broader patent agent privilege available under French law. *Duplan* II at 1170; *Duplan* I at 765–68. There is no question with respect to the scope of the privilege which might attach to Rouse's communications under French law, in the present case.

■■■ With respect to the scope of "relevance" under F.R.C. 26 in considering a request for non-party documentary discovery, A. B. Dick relies upon *Collins and Aikman Corp. v. J. P. Stevens & Co.,* 51 F.R.D. 219 (D.S.C.1971), for the proposition that a "greater degree" of relevance (than that set forth in F.R.C.P. 26) must be demonstrated before production will be compelled in accordance with such request. But this proposition misunderstands the holding in *Collins and Aikman.* In that case, compelled disclosure to a party of a non-party competitor's documents was conditioned on the performance of an in camera inspection, in order to protect the competitor from unnecessary and unreasonable disclosure of confidential information under F.R.C.P. 45(b), and *not* because of some heightened standard of relevance under F.R.C.P. 26. *See also, United States v. American Telephone & Telegraph Co.,* 461 F.Supp. 1314, 1332 (D.D.C.1978). Certainly, once a party has demonstrated the relevancy of certain matters in a discovery request, as Mead did herein prior to this Court's October 25, 1979 *Order,* the requested matter does not become irrelevant because it turns out to be the proprietary information of a non-party competitor. Rather, it is only the objection of unreasonableness or oppression, in potential irreparable injury to the competitor's competitive position by compelled disclosure, which thereby becomes available; and it is the competitor's burden to prove such injury in making the objection. *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 998–99 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). *See also, United States v. American Optical Co.,* 39 F.R.D. 580, 586–87 (N.D.Calif.1966). Neither A. B. Dick nor G.E.C. has suggested that disclosure of any part of the Rouse documents would irreparably injure G.E.C.'s competitive position, except as might be inferred from the conclusory designation of those documents as "confidential." Moreover, the Court notes that the status of G.E.C. as a non-party was raised and considered in this Court's disposition of Mead's prior request for Letters Rogatory; as such, Mead's right to disclosure of the documents in question must be considered the law in this case, despite G.E.

C.'s non-party status, absent a specific showing that A. B. Dick or G.E.C. would in fact be injured thereby.

For the forestated reasons, this Court concludes that the Rouse documents are not precluded from compelled production on grounds of irrelevance or privilege. If said documents are in the possession, custody or control of A. B. Dick, they are ordered produced pursuant to F.R.C.P. 37(a). If said documents are not within A. B. Dick's control, but remain within the possession, custody or control of the non-party G.E.C. and/or Rouse, then upon representation to that effect by Mead the Court would order that Letters Rogatory issue in order that production may be had by process of the British Courts.