**Deborah Lyn PHILLIPS and Matilda Phillips, Plaintiffs,**

v.

**DALLAS CARRIERS CORPORATION and Raymond Smith, Defendants.**

**No. C–90–87–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Dec. 14, 1990.

---

Richmond G. Bernhardt, Jr. and Jon Berkelhammer, Greensboro, N.C., for plaintiffs.

Ed Bowden, James H. Kelly, Jr., and Clifford P. Britt, Winston–Salem, N.C., for defendants.

## DISCOVERY ORDER

P. TREVOR SHARP, United States Magistrate Judge.

This matter comes before the Court on plaintiffs' motion to compel production of a written statement given by defendant Raymond Smith concerning the automobile accident that gives rise to this action. Defendants Dallas Carriers and Smith oppose the motion. The parties have fully briefed their positions and the matter is before the Court for a ruling.

### Statement of Facts

At approximately 5:40 p.m. on February 17, 1987, plaintiff Lyn Phillips was traveling east on U.S. 64 in Randolph County. At the intersection of U.S. 64 and Rural Paved Road 1416, the automobile that plaintiff was driving was struck from behind by a tractor-trailer owned by defendant Dallas Carriers and operated by defendant Smith. The collision occurred as Phillips was turning left from U.S. 64 onto to Road 1416.

Shortly after the collision, Smith called his dispatcher in Rockwell, Texas, and reported the accident. The dispatcher directed Smith to wait in Asheboro for an insurance adjuster. The adjuster arrived soon thereafter, took photographs of the truck, and made a written record of a statement from Smith concerning the accident. Smith read and signed the statement. He slept in his truck that night and then drove his truck to Greensboro, where he left it to be repaired. He returned to his home in New Orleans on February 18, 1987, the day after the accident.[1]

Plaintiffs filed this action on February 16, 1990, almost three years to the day after the accident. Plaintiffs alleged that they were damaged as a proximate result of the negligence of Raymond Smith. Defendants filed answer on April 30, 1990 and asserted the following Second Further Answer and Defense:

> Deborah Lyn Phillips was negligent, which negligence is at least one of the proximate causes of the accident, and further was grossly negligent, in that she failed to check her rear view mirror prior to beginning a left turn, in that she failed to give a turn signal, in that she failed to check her side view mirror prior to beginning a left turn, in that she heard or should have heard the horn from the Defendant's truck and still began her turn, in that she made a movement from a stopped position without first seeing that a movement could be made in safety, in that she turned left directly into the path of the Defendant's truck without first seeing that her movement could be made in safety, in that she failed to keep proper lookout and maintain control of her automobile, and in that she was otherwise negligent and careless, which is hereby pled in bar of any recovery by the Plaintiff against these Defendants.

In discovery, plaintiffs requested that defendants produce "[a]ll reports, investigations ... or other paperwritings, not otherwise privileged, regarding the motor vehicle collision between the tractor-trailer driven by defendant Raymond Smith and owned by Dallas Carriers Corporation and the motor vehicle driven by plaintiff Lyn Phillips." (Plaintiffs' First Request No. 2.) Defendants identified the February 17, 1987 statement given by Smith to the insurance adjuster as responsive to plaintiffs' request, but objected to its production upon grounds of privilege.

---

1. The first two paragraphs of the Statement of Facts are drawn substantially from plaintiffs' representations, to which defendants have not taken exception.

## Issue

The issue for decision may be fairly stated as follows: "Is the written statement of defendant Raymond Smith, which was taken by an insurance adjuster on the day of the automobile accident giving rise to this litigation, protected from discovery by the attorney-client privilege or by work-product protection?" The Court will determine the issue by following the order of argument suggested by plaintiffs. Plaintiffs contend that (1) assuming arguendo that attorney-client privilege attaches to the Smith statement, defendants have waived the privilege; (2) the attorney-client privilege does not, under North Carolina law, attach to the document in question; (3) the document is not covered by the work-product doctrine; and (4) if work-product protection does attach, plaintiffs may nonetheless have discovery of the document under the terms of Rule 26(b)(3), Fed.R.Civ.P.

## Waiver of the Attorney–Client Privilege

■ Plaintiffs contend that defendants waived any applicable attorney-client privilege with respect to the Smith statement when they responded to plaintiffs' document request No. 2 by stating:

NOW COMES the defendant, Raymond Smith, in response to plaintiffs' First Request for Production of Documents, and attaches copies of the relevant log book pages of the log book maintained for the trip leading to the accident on February 17, 1987. This defendant specifically objects to the production of any statements made by this defendant to an insurance adjuster, on the grounds that this statement was prepared in anticipation of litigation under the provisions of Rule 26(b)(3).

It is well settled that the failure to make a timely objection in response to a Rule 34 request results in waiver. *See, e.g., Perry v. Golub,* 74 F.R.D. 360 (N.D.Ala.1976). On review of defendants' response standing alone, plaintiffs' argument would seem well-taken. As defendants have pointed out, however, the written request they were responding to, *by its own terms,* exempted documents withheld from discovery under claim of privilege. The request called for all documents, "not otherwise privileged," regarding the accident. The Court finds that plaintiffs' request preserved all general privilege claims for defendants, and their specific notation of a claim of work-product protection does not serve to waive other applicable privileges. Defendants have not, under the circumstances of this case, waived any attorney-client privilege which may attach to the Smith statement.

## Applicability of the Attorney–Client Privilege

■ Since no waiver of any applicable attorney-client privilege is found, the Court must determine whether in fact the attorney-client privilege attaches to the Smith statement. The statement was taken by an insurance adjuster on February 17, 1987, the date of the motor vehicle collision in question. The statement was given by Smith in a restaurant or truck stop. There is no showing that the statement was obtained at the request of counsel or that counsel for defendants were retained or consulted at the time the statement was taken. Rather, the statement was taken as a result of instructions issued by a company dispatcher when Smith called and reported the accident.

Since the Court sits in diversity in this action, it must apply the law of the forum state in determining questions of privilege. *See* Wright & Miller, *Federal Practice and Procedure: Civil,* § 2016. No North Carolina court has yet determined the precise question of whether communications by an insured to his insurer are protected under the attorney-client privilege. Therefore, this Court, relying upon reason and consideration of out-of-state authority, must predict how the North Carolina Supreme Court would likely rule. *See Erie R. Co. v. Tompkins Railroad,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Stephens v. State Farm Mutual Automobile Ins. Co.,* 508 F.2d 1363, 1366 (5th Cir.1975).

A canvas of general law shows that a number of states construe the attorney-client privilege broadly enough to cover the

sort of document now under consideration by the Court. For example, in *People v. Ryan*, 30 Ill.2d 456, 197 N.E.2d 15 (1964), an insured motorist, protected by an insurance policy that carried the usual "duty to defend" clause, was involved in an automobile collision. Two days after the accident, an insurance investigator took a written statement from the insured. The Illinois Supreme Court held that the statement was protected from discovery by reason of the attorney-client privilege, reasoning that,

'When Della Emberton [insured] gave her written signed statement to the investigator, that investigator and her insurance carrier became her agent to transmit the document to the attorney selected or to be selected to represent her in the business to which the document pertained....' [B]y the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominate purpose of transmitting it to an attorney for the protection of the interests of the insured. We believe that the same salutory reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton made her statement to the investigator for her insurer.

197 N.E.2d at 16–17.

Similarly, in *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo.1976), the defendant was involved in a collision while operating a tractor-trailer. An insurance adjuster for the common carrier took a statement from the insured on the day after the accident. The *en banc* Missouri Supreme Court held that the insured was protected by the attorney-client privilege, even though the defendant was not represented by counsel when he gave the statement, and wrote:

[T]he first question to be determined is whether the communications ... by relator Cain [the insured] to James Owens [adjuster] come within the attorney-client privilege. If they do, they are not discoverable and the protective order should be entered....

It is true, as respondent points out, that the Turner affidavit does not at any time recite a specific date on which the Turner firm was employed and began its representation of Cain in this matter.... We have concluded that in deciding whether the statements of Cain to James Owens are privileged it is unnecessary for us to resolve from the language of the Turner affidavit ... whether an actual attorney-client relationship existed between the Turner firm and Cain prior to the conferences of November 18 and 20, 1974 [the dates on which the insured gave statements to the insurer]. We reach this conclusion on the basis that it is clear that an insurer-insured relationship existed between the insurance company and Cain at the time of the statements and, for reasons subsequently enumerated, we conclude that by reason of such relationship, the statements given by Cain to his insurer fall within the protection of the attorney-client privilege.

540 S.W.2d at 52–53. *Accord, Brakhage v. Graff*, 190 Neb. 53, 206 N.W.2d 45 (1973); *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979); and *Grand Union Co. v. Patrick*, 247 So.2d 474 (Fla.Dist.Ct.App.1971); *see also* 81 Am.Jur.2d *Witnesses*, § 194 (1976).

The courts of other states would not find privilege with respect to communications by an insured to an insurance adjuster made prior to the formation of an attorney-client relationship. In *Langdon v. Champion*, 752 P.2d 999 (Alaska 1988), the Alaska Supreme Court rejected such a claim of privilege. After considering much of the authority summarized above, the Court compelled production of the insured's statement given to an adjuster. The Court wrote that "communications between insured and insurer are not in the same class as communications between client and attorney, because the insurer may use its

information for purposes inimical to the interest of the insured." 752 P.2d at 1003. The Court recognized that such a statement generally is made as a condition of fulfilling a policy requirement and to comply with the policy's cooperation clause.

> If the statement be false, the insurer may use it against the insured as foundation for a claim of noncooperation. If the statement discloses facts giving rise to some other defense against the insurer's liability under the policy, the insurer is doubtless free to make use of those facts.

*Id.* (quoting *Jacobi v. Podevels,* 23 Wis.2d 152, 127 N.W.2d 73, 76 (1964). The Court observed that the insurance carrier is not simply an agent for transmission of the insured's statement to an attorney. Rather,

> [t]he insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with the business of the company. Coverage, cooperation, and renewal are a few of the matters, in addition to consideration of the potential claim, for which the insurer may use the statement of the insured. The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege upon his behalf.

*Id.* (quoting *Butler v. Doyle,* 112 Ariz. 522, 544 P.2d 204, 207 (1975). Other state courts have reached a similar result. *See, e.g., DiCenzo v. Izawa,* 68 Hawaii 528, 537, 723 P.2d 171, 177 (1986); *Butler v. Doyle,* 112 Ariz. 522, 544 P.2d 204 (1975); *Alseike v. Miller,* 196 Kan. 547, 412 P.2d 1007 (1966); *State v. Anderson,* 247 Minn. 469, 78 N.W.2d 320 (1956); and *Jacobi v. Podevels,* 23 Wis.2d 152, 127 N.W.2d 73 (1964).

■ In predicting how the North Carolina Supreme Court would decide the question now before this Court, the decisions of other state jurisdictions are illuminating. Nonetheless, the Court must give primary weight to the reasoning employed by the North Carolina courts in interpreting the scope of North Carolina's law of privilege. The elements of the privilege as applied in North Carolina may be summarized as follows: (1) the attorney-client relationship must have existed at the time of the communication; (2) the communication must have been made in confidence; (3) the communication must relate to a matter concerning which the attorney is employed or is being professionally consulted; (4) the communication must be made in the course of seeking or giving legal advice; and (5) the privilege is that of the client. 1 Brandis, *North Carolina Evidence,* § 62 (3rd ed. 1988). Longstanding North Carolina authority provides that the privilege is to be narrowly construed and does not extend to declarations made prior to the formation of an attorney-client relationship. In *State v. Smith,* 138 N.C. 700, 50 S.E. 859 (1905), the State, trying the defendant for rape, offered the testimony of Jasper Ebbs. The defendant claimed attorney-client privilege with respect to communications he had had with Ebbs. Defendant stated that he had consulted Ebbs prior to his preliminary examination before a Justice of the Peace. The defendant (and his father) asked Ebbs to "do what he could" for the defendant. Ebbs represented the defendant before the Justice of the Peace. At trial, Ebbs testified concerning statements made to him by the defendant. On appeal, the Supreme Court held the attorney-client privilege to be inapplicable. The Court wrote:

> The declarations were made before the [attorney-client] relation existed and had Ebbs been an attorney at law, the prisoner could not deprive the State of such important evidence by 'retaining' the witness. The relation of client and attorney at law did not exist at any time between Ebbs and prisoner. Ebbs may have acted as his adviser before the trial before the Justice of the Peace, but he had no legal right to appear as prisoner's attorney in any court in this State, and there is no evidence that he did. Courts will not extend the rule as to privileged communications. 'As the rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy that gave birth to it.' ... The rule extends only to such confi-

dential communications as are made to the attorney by virtue of his *professional* relation to the client.

138 N.C. at 702–03, 50 S.E. at 860 (emphasis in original). In *State v. Van Landingham*, 283 N.C. 589, 197 S.E.2d 539 (1973), the North Carolina Supreme Court again emphasized that the privilege attaches only where an attorney-client relationship is in existence and communications are made to the ·attorney in his professional capacity, and does not apply where the "adviser" has no right to appear as an attorney in the courts of the state.

No North Carolina case found by the Court or brought to its attention remotely supports the argument that the North Carolina Supreme Court would extend the attorney-client privilege to cover a statement made to an insurance adjuster, not in the presence or at the request of counsel, and even before an attorney-client relationship exists. Indeed, defendants, who urge a broad reading of the privilege, have not directed the Court to *any* North Carolina law at all, let alone any that carries the "seed" of a reasoned argument for predicting that the North Carolina Supreme Court would find privilege in the circumstances of the case at bar.

On review of the authority summarized above, the Court concludes that the North Carolina Supreme Court would not find the Smith statement to be protected by the attorney-client privilege.

### Work–Product Protection

■ Rule 26(b)(3) defines work-product material as "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)...." The critical phrase for interpretation is "in anticipation of litigation." Plaintiffs contend that *McDougall v. Dunn*, 468 F.2d 468 (4th Cir.1972), establishes it as the law of this circuit that statements taken routinely by claims adjusters are not "in anticipation of litigation" and must be produced in discovery. The Court does not, however, read *McDougall v. Dunn* so broadly as to establish a bright-line rule that such statements are always subject to discovery. The Court of Appeals noted in that case, which involved a statement given to an insurance adjuster shortly after an automobile accident, that it was "not at all convinced" that the statements were work product, and observed that "[t]he statements were secured by the claim adjuster in the regular course of his duties." The Court wrote that "[i]f ... it be assumed that the statements herein do not fall within the definition of [work-product] materials" then the only requirement for production would be relevance. *Id.* at 473. The actual holding of *McDougall v. Dunn* is that the statements in question were discoverable, even assuming they constituted work-product material, because the plaintiff had unquestionably shown a "substantial need" for the documents and an inability "without undue hardship" to obtain their substantial equivalence by other means. The plaintiff in *McDougall v. Dunn* had sustained head injuries and was unable to recall the events of the accident, and the defendant, during discovery, had supplied interrogatory answers notable for their "sketchiness."

The case at bar is quite similar to *McDougall v. Dunn*, and the Court will resolve it precisely as did the Court of Appeals. Even assuming that the Smith statement could be characterized as work product, the plaintiffs herein are entitled to its production under the provisions of Rule 26(b)(3). That rule provides that work-product materials may be obtained in discovery "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The plaintiffs herein have demonstrated a substantial need for the statement. Plaintiff Lyn Phillips has no direct memory of the collision, the Court is advised. Defendants have interposed and seriously pressed a defense of contributory negligence. The Court has reviewed the entirety of the deposition of Raymond

Smith and finds that, in important respects, the passage of time since the accident has apparently resulted in the defendants' inability to recall significant aspects of the collision. Plaintiffs cannot obtain the substantial equivalent of the Smith statement, the statement being a nearly contemporaneous account of the events put in issue in this litigation.

Defendants attempt to distinguish *McDougall v. Dunn* by pointing out that in this case the plaintiffs were represented by counsel from an early time, and presumably could have taken Smith's statement long ago. In *McDougall v. Dunn,* the plaintiff did not retain counsel until almost two and one-half years after the accident. Defendants suggest that plaintiffs' counsel should have been more aggressive in interviewing Smith near the time of the accident and should not now benefit from a lack of diligence. The Court rejects this argument in its entirety. Smith was obviously to be a defendant in the litigation, not a mere witness. Counsel may well have had good reason not to "interview" a prospective defendant who could not be required to give a statement under oath or compelled to testify outside of litigation proceedings. Moreover, the record in this case shows that plaintiffs' counsel and defendants' counsel repeatedly discussed settlement of plaintiffs' claims in the time prior to the filing of suit (and actually settled the property claim), and the Court does not consider that the time invested in this endeavor was wasted. Accordingly, the Court rejects defendants' argument that *McDougall v. Dunn,* should be distinguished on this ground.

Plaintiffs are entitled to production of the Smith statement because (assuming the document is work-product material) they have made the showings required by Rule 26(b)(3).

### Conclusion

For reasons set forth above, the Court finds that the Smith statement is not protected by the North Carolina attorney-client privilege, and plaintiffs are entitled to production of the document in accordance with the provisions of Rule 26(b)(3). Defendants shall produce the document within twenty (20) days of this order.