Daniel J. McDOUGALL, Jr., Plaintiff-Appellant,

v.

Kenneth R. DUNN, Defendant-Appellee.

No. 72–1096.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 29, 1972.

Decided Oct. 10, 1972.

Eugene H. Phillips, Winston-Salem, N. C., for appellant.

Joe McLeod, Fayetteville, N. C. (Quillin, Russ, Worth & McLeod, Fayetteville, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge:

While riding as a passenger in a car driven by the defendant, the plaintiff received serious brain injuries, which resulted in amnesia. At the time of the accident, the plaintiff, as well as the defendant and the third occupant of the car, were members of the armed services, stationed at Fort Bragg, North Carolina. Since he was in the military service at the time, the plaintiff was immediately carried, following the accident, to the Womack Hospital at Fort Bragg, where he received first-aid treatment, and then was taken to the U. S. Naval Hospital at Portsmouth, Virginia, where he remained from February 3, 1968, to August, 1968, under the care and treatment of neurosurgeons. In July, he was given a thirty-day leave to return home but, at the end of the leave, returned to the hospital at Portsmouth, not being discharged until near the end of the year 1968. In short, he was in the hospital at Portsmouth, under treatment for his brain injury, practically continuously for almost a year after the accident in a condition where he had no recollection of any of the events surrounding the accident. At the end of 1968, he apparently returned home but has continued to receive treatment intermittently since at the Veterans Administration Hospital at East Orange, New Jersey. It was not until almost two and a half years after the accident that he employed counsel to represent him and to file suit.

The accident itself occurred in the early morning of February 3, 1968, or late night of February 2. The plaintiff, the defendant, and one Ehrenfried had left Fort Bragg in the early evening of February 2 in the car of the defendant. According to the defendant, the three first went to a movie and then spent about three hours at a drive-in located about ten miles from the scene of the accident. While returning to Fort Bragg from the drive-in at about midnight, the defendant swerved off the highway suddenly and crashed into a tree, or, as the defendant described it in his report to the State Highway Department, he "lost control * * * and crashed into a tree".

Counsel for the plaintiff, in seeking to develop the facts of the accident beyond the bare recital given by the defendant in his accident report to the State Highway Department, propounded a number of interrogatories and requests for admission to the defendant. The answers to the interrogatories were prepared and made by defendant's counsel. The plaintiff objected to answers by counsel rather than defendant and demanded that defendant be required to answer personally under oath the interrogatories.[1] He, also, assailed the adequacy of the answers. The District Court, during argument on the motion for a new trial, termed the answers "skimpy" but overruled plaintiff's objections to their adequacy and, while expressing some reluctance, accepted the answers by defendant's counsel.

In defendant's answers, it appeared that "shortly" after the accident, the defendant's insurance carrier had taken written statements from all three occupants of the car and defendant's counsel had had access to such statements in preparing the answers to interrogato-

---

1. 33(a), Rules of Civil Procedure, 28 U.S.C.

ries. The answers and admissions of the defendant, for all practical purposes, conceded the defendant's negligence [2] but made plain that defendant's defense would be based on his plea of contributory negligence.[3] This was obvious from the answer of defendant's counsel to an interrogatory that the three occupants of the car, after consuming between them a pint of liquor, went to Steve's Drive-In at about 9:30 on the night of the accident "and drank vodka there until midnight when plaintiff, defendant and Jon Ehrenfried left Steve's Drive-In to return to Fort Bragg; collision occurred on return trip to Fort Bragg." Counsel for defendant enlarged on this at a pre-trial hearing by stating that the three had consumed two bottles of vodka between 9:30 and the time they left the Drive-In. It thus is clear that the crucial issue in the case revolved about defendant's defense of contributory negligence and about the evidence of drinking among the three occupants of the car during the hours before the accident. The only direct evidence on this issue, as suggested by the parties, was the testimony of the three parties themselves. Unfortunately, the accident had robbed the plaintiff of any ability to testify on the issue. This meant that the defend-

ant and the third occupant, both of whom had given statements to claim adjusters for defendant's insurance carrier "shortly" after the accident, constituted the best, if not the only available fairly contemporaneous evidence on the point.

■ Under these circumstances, the plaintiff naturally moved to require the defendant to produce, and to permit him to copy, the statements of the defendant and the third occupant of the car taken after the accident.[4] The defendant objected to this demand "to examine some statements which are part of my work product and file" and argued that the demand was not supported by good cause. He claimed that, absent a showing of good cause, "documents contained in the lawyer('s) work product or *files of representatives of the company*" (apparently referring to the insurance carrier of the defendant; italics added), were not discoverable. This motion was denied without prejudice to plaintiff's right to renew if the defendant or third occupant "testifies(d) at the trial".[5]

The cause proceeded to trial. Ehrenfried did not appear or testify. During the testimony of the defendant, the plaintiff did not renew his motion to require the production of the defendant's statement as given to the adjuster about

---

2. The defendant, in his answers, conceded that he was not maintaining a proper look-out and was driving at a greater rate of speed than allowable by law. He, also, gave a statement about his drinking prior to the accident.

3. For his plea of contributory negligence, defendant relied primarily on Tew v. Runnels (1958) 249 N.C. 1, 105 S.E.2d 108, 113–114, where the Court quoted with approval from a Kentucky case the following statement:
    "It is well settled in this jurisdiction that a guest riding in an automobile with knowledge that the driver is so intoxicated as to cause him to be careless or indifferent to his own safety or that of others, or incompetent to operate the car properly, is guilty of contributory negligence as a matter of law and assumes the risk incident to the operation of the car by a driver in that condition."

4. The motion was apparently made orally but no objection was made on this ground and the parties, along with the Court, proceeded to consider the motion on the record and the briefs filed by the parties. Under the circumstances, the motion was properly before the Court and so treated. See Jones v. Uris Sales Corporation (2d Cir. 1967) 373 F.2d 644, 647–648.

5. The District Court required the production of the statement procured from the plaintiff himself. Such production was required under the provisions of Rule 26 (b)(3): "A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party." There was, of course, little or no value to such statement, so far as preparation for trial was concerned, since the plaintiff, as a result of his amnesia, was unable to give any account of the accident or the events leading up to it.

three years earlier. The testimony of the defendant was not entirely in line with the statements made in the answers to interrogatories. Submitted to the jury, the case resulted in a verdict for the defendant. From the judgment entered on the verdict, the plaintiff has appealed.

█ In his appeal, the plaintiff's primary contention is that the District Court erred in sustaining the validity and sufficiency of the defendant's answers to interrogatories as given under oath by his counsel rather than signed by him personally. Rule 33 expressly provides that the answers are to be "by the party served", and are to be "in writing under oath, * * * signed by the person making them * * *." Wright and Miller, Federal Practice and Procedure, vol. 8, sec. 2172, p. 535 (1970) states categorically that under this Rule "Interrogatories addressed to an individual party must be answered by that party." Moore's Federal Practice, vol. 4A, sec. 33.25(1) (1972) is equally positive, putting it that, "The answers must be made in writing under oath, and must be signed by the person making them."[6] And it was so held, at least by implication, in Jones v. Goldstein (D.C.Md.1966) 41 F.R.D. 271, 274, and it would seem is a necessary corollary of the ruling in Cabales v. United States (D.C.N.Y.1970) 51 F.R.D. 498, 499, aff. 2 Cir., 447 F.2d 1358, and Watson v. Malcom (D.C.Alaska, 1951) 12 F.R.D. 109, 110, 13 Alaska 528. Nor is the requirement of the Rule to be relaxed merely because of difficulties relating to the availability of the party. Cabales v. United States, *supra*. It is accordingly no excuse, as urged in the District Court by the defendant, that the defendant was living in Michigan and was not readily accessible to defendant's counsel. Counsel was representing defendant's insurance carrier and it is obvious that such carrier could easily have arranged through counsel in Michigan to have had the defendant answer

personally "in writing" and "under oath" the interrogatories. For that matter, paraphrasing the language of the Court in *Cabales*, the Rule makes no exception because the party lives at a distance from his counsel or the place of trial.

Contrary to the authorities discussed *supra*, the defendant asserts that, "As to whether or not an attorney can answer Interrogatories for the party, the authorities are not clear" and cites note 29, Wright and Miller, *supra*, at p. 535 in support. In so doing, he disregards entirely the flat statement set forth in the text itself of the authoritative work cited to the effect that the interrogatories "must be answered by that party." And in note 29, which the defendant partially quotes in his brief, *Wright and Miller* state, in reference to their statement in their text that the party himself must personally sign the answers, that "There is no case squarely in point, *though the proposition stated in the text seems supported by Watson v. Malcom, D.C.Alaska 1951, 12 F.R.D. 109* [13 Alaska 528]." (Italics added) It is of significance that, in quoting note 29 and intimating that the question was considered in doubt by *Wright and Miller*, the defendant omitted the italicized language, which conveyed an entirely different inference and gives support to the contention of the appellant.

█ In our opinion, a proper construction of Rule 33, as suggested both by *Wright and Miller* and by *Moore*, would have required that the defendant sign under oath the answers to the interrogatories propounded to him by the plaintiff. The cause has, however, been tried and we would be reluctant to reverse simply on this somewhat technical point alone, were there not a more serious error obvious in the record and one that manifestly disadvantaged the plaintiff in properly preparing for trial. The denial of plaintiff's motion to require the defendant to produce the statements given by the defendant and Eh-

6. To the same effect in Cyclopedia of Federal Procedure, vol. 7, sec. 25.423, p. 361 (3d ed. 1971).

renfried "shortly" after the accident to the claim adjuster for the defendant's insurance carrier prejudiced improperly the plaintiff both in his preparation for trial and at the trial. Such prejudice can only be corrected by a new trial.

■ The theory on which the defendant resisted the motion to produce was that the statements given represented materials "prepared in anticipation of litigation or for trial" and were discoverable only upon a showing of good cause as defined in Rule 26(b)(3), incorporated in the 1970 Rules Amendments. This contention was accepted by the District Court. We are not at all convinced that the statements demanded met the definition of materials embraced within Section (b)(3) of Rule 26. The statements sought for production were secured by a claim adjuster of the insurance carrier of the defendant more than two and one half years before any claim was made or suit begun or before the plaintiff had retained counsel. The statements were secured by the claim adjuster in the regular course of his duties as an employee of the insurance company and presumably were incorporated in the files of the company. Speaking to certain statements not too dissimilar to those involved here and after a most painstaking and thorough consideration of the construction to be given Rule 26(b)(3), as included in the 1970 Amendments, the Court in Thomas Organ Co. v. Jadranska Slobodna Plovidba (D.C.Ill.1972) 54 F.R.D. 367, 372, said:

> "This trend which was followed in the framing of Rule 26(b)(3) compels the

Court to conclude that *any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b) (3) and (b)(4)." (Italics in opinion).

If, in line with this construction of Rule 26(b)(3), it be assumed that the statements herein do not fall within the definition of materials, the production of which is controlled by such subdivision of the Rule, then the only applicable requirement for their production under the other subdivision of the Rule was relevance. See, *Thomas, supra.*[7] On that there could be no dispute and the statements should have been ordered produced.

Even if, however, this view not be accepted and the statements be considered materials, the production of which was controlled by Section 26(b)(3), the statements would still have been discoverable if it appeared that the party seeking discovery met the conditions of that subdivision that he "has (had) substantial need of the materials" and "he is (was) unable without undue hardship to obtain the substantial equivalent of the materials by other means."[8] A lawsuit, it has been well said, "is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided." Tiedman v. American

---

7. At pp. 370–371, 54 F.R.D.

8. The purpose of the 1970 Amendments of Rules 34 and 26 was to eliminate certain confusion that had developed over the circumstances when "trial-preparation" or "work-product" material was discoverable and to provide a general rule for the discovery of such material. Thus the Advisory Committee stated the purpose of the Amendments thus (48 F.R.D. 500):

> "The rules are amended by eliminating the general requirement of 'good cause' from Rule 34 but retaining a require-

ment of a special showing for trial preparation materials in this subdivision. The required showing is expressed, not in terms of 'good cause' whose generality has tended to encourage confusion and controversy, but in terms of the elements of the special showing to be made: substantial need of the materials in the preparation of the case and inability without undue hardship to obtain the substantial equivalent of the materials by other means."

Pigment Corporation (4th Cir. 1958) 253 F.2d 803, 808. Statements of either the parties or witnesses, taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute "unique catalysts in the search for truth" in the judicial process; and where the party seeking their discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery. Southern Railway Company v. Lanham (5th Cir. 1968) 403 F.2d 119, 128, reh. den. 408 F.2d 348; Goosman v. A. Duie Pyle, Inc. (4th Cir. 1963) 320 F.2d 45, 50–53; Southern Railway Company v. Campbell (5th Cir. 1962) 309 F. 2d 569, 572; De Bruce v. Pennsylvania R. Co. (D.C.Pa.1947) 6 F.R.D. 403, 406; Kennedy v. Senyo (D.C.Pa.1971) 52 F. R.D. 34, 36–37; Clower v. Walters (D. C.Ala.1970) 51 F.R.D. 288, 289. The reason for such result was stated by this Court in New York Central Railroad Company v. Carr (4th Cir. 1957) 251 F. 2d 433, 435, where it was observed that " * * * the lapse of many months and the dimming of memory provides much reason for his counsel to examine any substantially contemporaneous declarations or admissions. Aside from what assistance it may be in the preparation of a case for trial, the production of such a statement, after the lapse of time, permits a more realistic appraisal of cases and should stimulate the disposition of controversies without trials." [9]

This conclusion, as expressed in *Carr*, is in line with the comments of the Advisory Committee in connection with the 1970 amendments of Rule 26. In this comment, the Committee suggested that a liberal attitude be adopted in the application of the Rule as it relates to "witness statements taken by an investigator" as distinguished from "other parts of the investigative file" and indicated that a special showing warranting discovery of such statements existed when the witness had "given a fresh and contemporaneous account in a written statement while he is available to the party seeking discovery only a substantial time thereafter." 48 F.R.D. 501. The Advisory Note cites Guilford National Bank v. Southern Ry. Co. (4th Cir. 1962) 297 F.2d 921, 926 and *Goosman, supra,* though decided before the 1970 amendment of Rule 26, as illustrative of the circumstances when discovery of witnesses' statements should be granted and when it should be denied under the 1970 Amended Rules. Thus, in *Guilford,* the Court said that " * * * it appears that the courts are unanimous in holding that a showing that the statements were made at the time of the accident satisfies the good cause requirement of Rule 34", if the party seeking discovery "had no opportunity to question the witnesses until weeks or months later, * * *." Discovery, however, was denied in that case because the party seeking discovery had taken statements from the same witnesses beginning "six days after the accident" and concluding "three days later"; [10] in short, because the party seeking discovery had himself been able to take roughly contemporaneous statements, his motion was denied. In *Goos-*

9. See, also, Gillman v. United States (D.C. N.Y.1971) 53 F.R.D. 316, 319:
   "Statements taken shortly after an occurrence are unique and can never be duplicated precisely (citing *Guilford* [Guilford Nat. Bank v. Southern Ry. Co., 4 Cir., 297 F.2d 921], among other authorities)."
   To the same effect is the observation in Wright, Federal Courts, (2d ed., 1971), 367:
   "The notion that the statement taken nearest to the event will most accurately reflect the perception the witness had of the event is amply supported by psychological studies, as well as by common sense. This fact lends strong support to the argument that lapse of time in itself creates necessity or justification for the production of statements taken near the time of the event."

10. 297 F.2d 926.

*man*, on the other hand, the party seeking discovery did not employ attorneys and was in no position to take statements from the witnesses until four months after the accident. Under these circumstances, the Court distinguished *Guilford* "because there plaintiff's counsel had interviewed the witnesses between six and nine days after the accident and, in the absence of circumstances indicating a distinct and irremediable disadvantage to the moving party, the information thus obtained was deemed as reliable as that obtained by the defendant on the day following the accident" but pointedly found that "Goosman's situation, however, fits the general rule" allowing discovery. That situation, which made discovery proper, was that the party seeking discovery had been unable, until four months after the accident, to secure statements from the essential witnesses. The Court accordingly concluded that Goosman, by the denial of his right of discovery under these circumstances, "may have sustained a disadvantage affecting the fundamental issues of liability,"[11] and a new trial was ultimately ordered for this reason. See Goosman v. A. Duie Pyle, Inc. (4th Cir. 1964) 336 F.2d 151.

■ It seems manifest that, under the principles stated and applied in *Goosman*, the plaintiff was entitled to the discovery of the defendant's and the third occupant's statements, taken by the defendant's insurance carrier. The plaintiff himself was helpless to reconstruct the events leading up to the accident or to secure contemporaneous statements from the other occupants of the car. It was almost a year before he was discharged from the hospital and, even then, he was handicapped with a loss of memory. More than two years passed before he engaged counsel and brought suit. Thus, neither he nor his counsel had any opportunity to interview immediately after the accident either the defendant or the third occupant of the car. For a "fresh and contemporaneous" account of the vital facts on defendant's

plea of contributory negligence, which incidentally was the crucial issue in the case, the plaintiff was dependent on the statements procured by the defendant's insurance carrier. By denial of access to such statements, which were presumably made available to defendant's counsel after suit was filed, and which were used by such counsel in preparing answers to interrogatories and in preparing for trial, the plaintiff and his counsel were seriously prejudiced in the trial of the cause and "sustained a disadvantage affecting the fundamental issues of liability". This prejudice was magnified by the very sketchiness of the defendant's answers to interrogatories, a sketchiness which, as has been observed, the Trial Court adverted to during the hearing on the motion for a new trial. Neither as *Carr* so clearly phrased it, was examination of the witnesses after suit was filed, (almost two years after the accident) any substitute for the contemporaneous accounts given by those witnesses when the events were fresh in their minds. It is, also, no answer that plaintiff might have secured the statements after the witnesses testified. The plaintiff needed the statements *to prepare for trial*, not simply to aid him in cross-examination at trial. This was not a criminal case, controlled by the Jencks Act under which discovery of witnesses' statements can only be had at time of trial;[12] discovery in civil cases is intended to assist in preparation for trial and is to be had before trial. Moreover, one of the witnesses did not testify and his statement, under the ruling of the District Court, would never have been discoverable by the plaintiff. Nor is it to be assumed that the plaintiff waived his rights to pre-trial discovery by failing to renew his motion at trial. Discovery at trial was not a substitute for his plain right to pre-trial discovery. Whatever value the statements may have had in preparation for trial could not have been secured by production at trial after the defendant took the stand. The prejudice suffered by the plaintiff oc-

11. 320 F.2d 51.

12. 18 U.S.C. Sec. 3500.

curred when his motion was initially denied and such prejudice could not have been erased by production after the defendant took the stand. Plaintiff clearly met the criteria established by Rule 26(b)(3) for discovery and the denial by the District Court of the motion for discovery, even if controlled by such provision rather than 26(b)(2), was "improvident and affected substantial rights", constituting clear error. Tiedman v. American Pigment Corporation, *supra*, 253 F.2d at p. 808.

 The plaintiff, it is true, did not appeal from the order denying discovery but contented himself with raising the sufficiency and validity of defendant's answers to interrogatories. Appellate Courts are not, though, powerless to correct errors in the trial, even if not raised by appeal, "where injustice might otherwise result * * *. Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice." Washington Gas Light Co. v. Virginia Electric & Pow. Co. (4th Cir. 1971) 438 F.2d 248, 250–251, quoting from Hormel v. Helvering (1941) 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037. See, also, Dudley v. Inland Mutual Insurance Co. (4th Cir. 1962) 299 F.2d 637, 641–642. Indeed, "Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below." Nuelsen v. Sorensen (9th Cir. 1961) 293 F.2d 454, 462; Washington Gas Light Co. v. Virginia Electric & Pow. Co., *supra*.

It is plain: the failure of the District Court to require that the defendant himself sign the answers to interrogatories, coupled with the improper denial of the plaintiff's motion to produce, requires a new trial in which these errors may be corrected.

The plaintiff, also, complains of the failure of the District Court to charge certain requests. Since there must be a new trial, it is unnecessary to consider these claims of error.

Judgment is reversed and a new trial ordered. Prior to trial, the District Court shall require the defendant to answer under oath personally the interrogatories propounded by the plaintiff, and to produce and permit the plaintiff, or his counsel, to copy the statements secured from the defendant and Jon Ehrenfried "shortly" after the accident.

Reversed and remanded.