Suzanne BASINGER, Administratrix of the Estate of Michael E. Basinger, deceased, Plaintiff,

v.

GLACIER CARRIERS, INC., and Robert Bruce Lane, Defendants.

Civ. A. No. 85–1411.

United States District Court, M.D. Pennsylvania.

Oct. 22, 1985.

Michael M. Badowski, Foulkrod, Reynolds & Havas, Harrisburg, Pa., for movant Remco Ins. Co.

Gary E. Wieczorek, Pittsburgh, Pa., for defendants.

### MEMORANDUM

CALDWELL, District Judge.

I. *Introduction.*

On or about August 8, 1985, Glacier Carriers, Inc. and Robert B. Lane, defendants in the above-captioned action, served a deposition subpoena upon Mike Reif, assistant claims manager for REMCO Insurance Company ("REMCO"), strangers to this litigation, commanding that Reif sit for deposition by defendants and produce for them REMCO's claim file on the motor vehicle accident giving rise to the action. On August 28, 1985, Reif and REMCO filed a motion for a protective order pursuant to Fed.R.Civ.P. 26(c) asking us to quash that

part of the deposition subpoena requiring the production of REMCO's investigatory file and to forbid defendants from deposing Reif as to matters contained in the file. They have requested that we grant them a protective order under the principles of Fed.R.Civ.P. 26(b)(3) which partially immunizes parties from revealing to opposing parties documents and tangible things prepared in anticipation of litigation.

Having been briefed on the motion, we grant a protective order prohibiting defendants from examining the documents contained in REMCO's investigatory file and prohibiting defendants from deposing Reif as to information contained in the protected documents.

## II. *Background.*

The circumstances giving rise to the instant discovery dispute are as follows.[1] On September 21, 1984, plaintiff's decedent, Michael E. Basinger, was killed when his motorcycle collided with a tractor-trailer owned and operated by defendants. Prior to the collision, Basinger had visited the Maple Pot Restaurant ("Maple Pot"), where, defendants allege, Basinger had consumed alcoholic beverages. Shortly after the accident, REMCO, Maple Pot's liability insurer, had Reif investigate the accident. The file generated by this investigation includes statements procured one month after the accident from two persons employed by Maple Pot at the time of the accident, police reports, and inter-office memoranda containing the mental impressions of REMCO personnel respecting the value or merit of a potential claim against Maple Pot. Subsequently, Basinger's administratrix filed suit only against defendants. Thereafter, defendants served their deposition subpoena upon Reif and REMCO.

## III. *Discussion.*

■ Rule 26(c) provides, in part:

(c) **Protective Orders.** Upon motion by a party or by the person from whom

discovery is sought, and *for good cause shown,* the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make *any order which justice requires* to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; .... (emphasis added).

Reif and REMCO contend that this rule is broad enough to permit us to apply Rule 26(b)(3) although REMCO and Maple Pot are not parties to the litigation. They may become parties because of the circumstances of the accident. Given Pennsylvania's "Dram Shop Act," Pa.Stat.Ann. title 47, § 4-493(1) (Purdon 1969 & Supp.1985), which renders a liquor establishment owner or employee civilly liable in damages for selling liquor to a visibly intoxicated person who subsequently injures himself or another, we accept this argument. It is not unlikely that defendants will join Maple Pot as a third-party defendant. Certainly, if a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly "burdensome" and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation. A contrary interpretation would permit a strategically delayed joinder to circumvent the purposes of Rule 26(b)(3). Accordingly, Reif and REMCO, as representatives of Maple Pot, may invoke that rule to protect REMCO's file.

---

**1.** The underlying lawsuit was filed in the United States District Court for the Western District of

Pennsylvania. We glean the following undisputed allegations from the briefs of the parties.

■ The dispute thus boils down to whether an insurance company whose business necessarily requires it to generate documents and other things in anticipation of litigation can invoke Rule 26(b)(3). Rule 26(b)(3) states in pertinent part that:

(3) **Trial Preparation: Materials.** ..., a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party *or by or for that other party's representative (including* his attorney, consultant, surety, indemnitor, *insurer,* or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. (emphasis added).

Federal courts are not in agreement as to whether an insurer's claim file, prepared after an accident that may generate a potential claim, can be protected from discovery under Rule 26(b)(3). It is unclear whether a majority position exists. *But see Fireman's Fund Insurance Company v. McAlpine,* 120 R.I. 744, 391 A.2d 84 (1978). The courts seem, however, to have adopted one of three positions.

Some courts deny protection to insurance reports not prepared under the guidance of an attorney. The leading case is *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972), an admiralty case arising from cargo loss. That court found that:

*[A]ny* report or statement made by or to a party's agent (other than to any attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4).... An insurance company by the nature of its business is not called into action until one of its insured has suffered some form of injury and has a potential claim.... We do not believe that Rule 26(b)(3) was designed to so insulate insurance companies merely because they always deal with potential claims.

*Id.* at 372–73. *Accord, Atlanta Coca-Cola Bottling Co. v. Transamerica Insurance Co.,* 61 F.R.D. 115 (N.D.Ga.1972) and *Universal Vendors, Inc. v. Candimat Co. of America,* 16 F.R.Serv.2d 1329 (E.D.Pa. 1972).

The *Thomas Organ* view has been rejected by many courts as contrary to the intent of the 1970 amendments to Rule 26(b). As one court noted, *"Thomas's* flat requirement of a lawyer's involvement raises a bump which the 1970 Amendments had smoothed over...." *Spaulding v. Denton,* 68 F.R.D. 342, 345 (D.Del.1975). Treatise writers have also criticized the *Thomas Organ* decision. One writer, in comparing the decision with the rule itself, noted that:

Under the new language, however, there will be no technical distinction between materials prepared by the attorney in the case and those that are prepared by a *claim agent, insurer,* or other agent of the party or by the party himself. Insofar as the "work product" doctrine is concerned, each will be judged upon the need to protect the privacy of the mental impressions, conclusions, opinions, or legal theories, of the attorney or *other representative* of the party. (footnote omitted) (emphasis added).

4 Moore's Federal Practice, section 26.64[3] at 26–416 (1979). "Thus it [is] clear that a report from the insured to the insurer is within the immunity as also will be statements obtained by investigators for the insurer." (footnote omitted). 8 Wright and Miller, Federal Practice and Procedure § 2024 at 206 (1970 and Supp.1985).

Courts disagreeing with the *Thomas Organ* view have adopted one of two other positions. Some courts have read Rule 26(b)(3) liberally. *See Fontaine v. Sun-*

*flower Beef Carrier,* 87 F.R.D. 89 (E.D.Mo. 1980) (any documents prepared in the wake of an accident are prepared in anticipation of litigation); *Almaguer v. Chicago, Rock Island & .Pacific R.D.,* 55 F.R.D.˙ 147 (D.Neb.1972) (statements taken by an insurance agent immediately after an accident are taken in anticipation of litigation). Other courts, recognizing the concerns of the *Thomas Organ* court about insulating insurance claim files from discovery, but finding the *Thomas Organ* view too restrictive, have adopted a case by case approach. *See APL Corp. v. Aetna Casualty & Surety Co.,* 91 F.R.D. 10, 18 (D.Md. 1980). We agree with the latter view. Clearly, Rule 26(b)(3) was not intended to protect all insurance claim files from discovery but, at the same time, by its very language, the Rule does protect without reference to any exception for insurance companies, materials prepared in anticipation of litigation. Therefore, we must look at the facts of this case to determine why REMCO's claim file was prepared.

■ The instant litigation does not directly involve Maple Pot or REMCO. The complaint seeks recovery for the death of plaintiff's decedent based only upon the collision with defendants' tractor-trailer. The decedent was at the Maple Pot, however, some time before his death. Obviously, both Maple Pot and REMCO recognized the potential for litigation because of Pennsylvania's Dram Shop Act, and REMCO conducted its investigation with Maple Pot's potential liability in mind. Under these circumstances, the material was gathered in anticipation of litigation.

The inquiry, however, does not end there. If a substantial need exists for the protected materials and if defendants are unable, without undue hardship, to obtain substantially equivalent information by other means, the rule requires that the information be discoverable.

The accident reports are certainly relevant to defendants' case and defendants have a substantial need for it. Defendants, however, can easily obtain the report from the Pennsylvania State Police so we will not compel discovery of this item.

The witness statements require more discussion. Defendants maintain that because the witnesses were employees of Maple Pot when the accident occurred, the witnesses will be hostile to defendants and will not reveal the same information contained in their earlier statements. Hence, they will not be able to obtain substantially equivalent information by other means. Defendants, however, although furnished with the witnesses' names and addresses, have made no attempt to depose them. Also, one witness is no longer employed by Maple Pot. Once defendants have deposed the witnesses, "[t]hen perhaps [they] might be in a position to say that the [witnesses] were reluctant to speak freely with them or were openly hostile, or that there was some reason to believe that their prior written statements were inconsistent with what they told [defendants]." *Guilford Nat. Bank of Greensboro v. Southern Ry. Co.,* 297 F.2d 921, 926 (4th Cir.1962). (brackets added). *Accord, Howard v. Seaboard Coastline Railroad Company,* 60 F.R.D. 638 (D.Ga.1973).

Defendants' other contention fails as well. Witness statements are considered unique when witnesses have given a nearly contemporaneous account of the incident while memories are fresh. When the same witnesses are available to the discovering parties only a substantial time thereafter, the likelihood that the discovering party cannot obtain substantially equivalent information is real.

It is important to note, ... that mere lapse of time should normally be enough to require production only of statements given at almost the same time as the accident. Were a statement given a week, or two weeks, after the accident at issue, the court might well require counsel to demonstrate ... that the witness was not available for deposition without undue hardship.

*Hamilton v. Canal Barge Co.,* 395 F.Supp. 975, 978 (E.D.La.1974). *See also Tinder v. McGowan,* 15 F.R.Serv.2d 1608 (W.D.Pa. 1970) (plaintiff's access to defendant's witness statements was limited to those secured within one week of the accident). In

this case Reif procured the statements approximately one month after the accident. Therefore the statements obtained were neither contemporaneous nor unique. Defendants can obtain substantially the same information by deposing the witnesses.

Finally, REMCO's file contains internal memoranda reflecting the mental impressions, conclusions, opinions and theories of its agents regarding the value of a potential claim against Maple Pot. Rule 26(b)(3) prohibits their discovery since they concern the litigation.

We will issue an appropriate order.

### ORDER

AND NOW, this 22nd day of October, 1985, it is ordered that the subpoena caused to be served upon Michael Reif on or about August 8, 1985, is hereby quashed. It is further ordered that Michael Reif shall not be deposed concerning the matters contained in the REMCO Insurance Company file relating to plaintiff's decedent's fatal accident.

The Clerk of Court shall close this file.