**Richard C. SUGGS, Individually and in his capacity as Personal Representative of the Estate of Florence E. Suggs, Deceased, Pauline Ellis, Paula Hopson, Thayon I. Mohr, Sr., Patricia Ruffin, Lawrence Ellis, and Betty L. Bailey, Plaintiffs,**

v.

**Julia W. WHITAKER, Cary Whitaker, and June Wahmann Whitaker, Horace Mann Insurance Company, and State Farm Mutual Automobile Insurance Company, Defendants.**

2:92CV00193.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Dec. 20, 1993.

McNeill Smith, Smith Helms Mulliss & Moore, Stanley Eric Speckhard, Alexander Ralston, Speckhard & Speckhard, Greensboro, NC, for plaintiffs.

William L. Stocks, Matthew L. Mason, Nichols, Caffrey, Hill, Evans & Murrelle, J. Clinton Eudy, Jr., Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Julia W. Whitaker, Cary Whitaker and June Wahmann Whitaker.

Regina J. Wheeler, David N. Allen, Parker, Poe, Adams & Bernstein, Charlotte, NC, for Horace Mann Ins. Co.

James Devaine McKinney, III, Frazier, Frazier & Mahler, Greensboro, NC, for State Farm Mut. Auto. Ins. Co.

### ORDER

ELIASON, United States Magistrate Judge.

Plaintiffs have filed a motion to compel the Whitaker defendants and the United States Fidelity & Guaranty Company (hereinafter denominated "the insurance company") to produce recorded statements of Julia W. Whitaker and Alford T. Thompson taken by the insurance company's investigator shortly after an automobile accident. The insurance company insures defendant Julia Whitaker and her parents. It contends that the reports constitute protected work product material prepared in anticipation of litigation and shielded from disclosure by the provisions of Fed.R.Civ.P. 26(b)(3).

#### Facts

Defendant Julia Whitaker was nineteen years old when she was driving home by herself from Davidson College on September 5, 1990. She had only been fully licensed for a little over a year. This was her second college driving experience by herself. She had driven to college in August of 1990 when she returned for the fall semester.

As defendant Julia Whitaker was driving north in the left lane on Interstate 85, near Greensboro, North Carolina, her motor vehicle went across the median and struck an automobile traveling in the oncoming traffic lane and occupied by certain of the plaintiffs. She allegedly was forced to drive onto the median because a tractor trailer in the right lane had encroached upon her lane. In plaintiffs' car, one person died and another was rendered a quadriplegic. Defendant was apparently not seriously injured.

Alford T. Thompson was also traveling north on Interstate 85 on September 5, 1990. He was driving in the right lane behind a truck. Defendant's car was in front of this truck but in the left lane. Mr. Thompson did not directly see the accident, although he saw defendant's car before it came to a stop. In his deposition long after the accident, he testified that he was in citizens band radio contact with the tractor trailer driver who was in front of him. This driver allegedly told Thompson to "back it down ... an eighteen wheeler done run a four wheeler over in the median." Thompson also testified that the driver who stated this stopped at the scene of the accident and told him that a truck in the right lane had come over into the left lane where Julia Whitaker was and that she had no place to go except the median. This unidentified driver allegedly did not want to be subpoenaed in court or get involved and left the scene after five minutes.

Both Whitaker and Thompson gave a recorded statement to the insurance company within approximately one week of the accident. Plaintiffs' attorney had a telephone conversation with Thompson in the days immediately following the accident but the interview was not recorded. Thompson had nothing of importance to say about the accident nor did he relate the important facts about the other truck driver and the driver's comments. Plaintiffs suggest other peculiarities with respect to Mr. Thompson, such as he drove Julia Whitaker to Durham after the accident, and he has had a dinner paid for by Julia Whitaker's father. Also, Thompson visited the Whitaker home and received a small gift box of pears. Furthermore, Thompson himself was injured in a later accident and consulted Julia Whitaker's father who is a lawyer.

Defendant Julia Whitaker claims she was driving the speed limit of 55 m.p.h. but admits she told the Highway Patrol right after the accident that she was driving 70 m.p.h. However, she refused to talk to plaintiffs' attorney or grant the Highway Patrol a re-interview several days following the accident.

Both Julia Whitaker and Alford Thompson have been deposed. Both have substantial memory of the accident. However, Mr. Thompson has no recollection of the statement which he made to the insurance company investigator or to plaintiffs' attorney immediately following the accident. Ms. Whitaker was deposed concerning the recorded statement she gave to the insurance company. She claims she reviewed it prior to the criminal case against her arising out of the accident but has not looked at it since that time. In her deposition, she was not directly asked about the contents of that statement. However, after she gave her recount of the events on the day of the accident, she was asked whether there was anything in her prior statement that needed to be corrected or clarified. Her response was that she earlier said when she went off the road she had jerked the wheel but now she just meant that she was turning the wheel and the wavering was caused by the movement of the car going off the road. The surviving plaintiffs, apparently being hit by surprise, are not able to give any account concerning the cause of the accident. Thus, there are no eyewitnesses other than Ms. Whitaker and Mr. Thompson, and the latter is not a direct eyewitness.

### Discussion

■ The work product doctrine contained in Fed.R.Civ.P. 26(b)(3) is essentially a codification of the Supreme Court's holding in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 981–82 (4th Cir.1992).[1] In order to as-

---

1. Rule 26(b)(3) provides in part:

*Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a

sert work product protection, a party must establish three things: (1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent. *Ennis By and Through McMillan v. Anderson Trucking,* 141 F.R.D. 258, 259 (E.D.N.C.1991). The party asserting work product protection bears the burden of proof of establishing entitlement to it. *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir.1992). In meeting this burden, such party may not rely on conclusory allegations or mere statements in briefs. Nor may the Court be expected to decipher the purpose behind the preparation of a document by merely reviewing documents submitted for *in camera* inspection. *Pete Rinaldi's Fast Foods v. Great American Ins.,* 123 F.R.D. 198, 203 (M.D.N.C.1988). Rather, it is incumbent upon the party to come forward with a specific demonstration of facts supporting the requested protection. *Id.* Such demonstration should preferably be made through affidavits from knowledgeable persons. Failure to so satisfy this burden, even though affidavits have been submitted, will lead to denial of the motion. *Sandberg v. Virginia Bankshares, Inc.,* 979 F.2d at 356.

■ Because work product protection by its nature may hinder an investigation into the true facts, it should be narrowly construed consistent with its purpose. *Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594, 602 (S.D.Ind.1993). The purpose behind work product protection is to safeguard the lawyer's work in developing his client's case. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 983. This is one pillar supporting our adversary system. *Id.* Work product protection may involve two classes of material. Opinion work product, which encompasses mental impressions and opinions prepared in anticipation of litigation, is absolutely immune from discovery. *Id.* at 983–84. All other documents are non-opinion work product. The reason for providing the latter type of material with protection is simply little more than "an 'anti-freeloader' rule designed to prohibit one adverse party from riding to court on the enterprise of the other." *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 985. Therefore, the fence which protects the sweat equity of the lawyer's non-opinion work product from casual view is not impenetrable but rather will be taken down when an opposing party shows substantial need for the documents. *Id.* In balancing the competing interests, the Court must keep in mind that "fairness in the disposition of civil litigation is achieved when the parties have knowledge of the relevant facts, ...." *Id.* at 983.

■ In the instant case, plaintiffs allege that defendants fail to show that the recorded statements of Ms. Whitaker and Mr. Thompson were prepared in anticipation of litigation. In order to qualify as being prepared in anticipation of litigation, "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 984 (emphasis in original). Because litigation is an ever present facet of American life, this test is not always an easy one to apply. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 984. Nevertheless, a court must be satisfied that the document or tangible thing was not created during the ordinary course of business, pursuant to

party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

laws, regulations or other obligations, or for any non-litigation purpose. *Id.*

In the instant case, defendants have presented the Court with sufficient facts to demonstrate that the recorded statements of Ms. Whitaker and Mr. Thompson were made in anticipation of litigation. Defendants submit the affidavit of William Delapp, supervising adjuster for the insurance company. He states that he became aware of the accident of his insured Julia Whitaker on or about September 5, 1990. Because one of the occupants in the other vehicle died and another sustained severe injuries, he felt that it was virtually certain that a lawsuit would be filed against his insured and, therefore, instructed an adjuster to obtain recorded statements from witnesses.

■ Plaintiffs, however, argue that no statement obtained by an insurance adjuster should be deemed work product material, relying on the Fourth Circuit opinion *McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972). They claim that in *McDougall,* the court cited with approval the case of *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972), which held that unless an attorney requested or prepared the statement, it would be presumed to have been made in the ordinary course of business. The problem with this argument is that the Fourth Circuit did not adopt the *Thomas Organ* rule, but merely cited it as one line of cases. *McDougall v. Dunn,* 468 F.2d at 473. It never had occasion to reach the issue because it found the statements were subject to disclosure whether or not they were work product. A respected treatise writer indicates that statements obtained by insurance investigators fall within work product protection. 8 Charles A. Wright & Arthur R. Miller, *Federal Rules of Practice and Procedure* § 2024 at 206 (1970). The Court would agree to the extent that it holds that witness reports obtained by insurance adjusters after an accident are not automatically disqualified from consideration as constituting work product material.

In *Basinger v. Glacier Carriers, Inc.,* 107 F.R.D. 771 (M.D.Pa.1985), the court recognized that the federal courts were not in apparent agreement as to whether an insur-er's claim file should be granted work product protection. It noted the *Thomas Organ* line of cases requiring guidance from an attorney before granting protection. Other cases appeared to indicate that any document prepared as a result of an accident should be considered as being prepared in anticipation of litigation. However, it agreed with *APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 18 (D.Md.1980), that the consideration should be on a case-by-case basis.

■ This Court also elects to follow the case-by-case approach of *Basinger* in determining whether insurance claims files are entitled to work product protection. For example, when an insurance company is investigating a claim from one of its insureds, it normally will have to make a decision as to whether the claim should be granted or denied before it can assert that the claim file was prepared in anticipation of litigation. *Pete Rinaldi's Fast Foods v. Great American Ins.,* 123 F.R.D. 198 (company's claim on carrier for employee embezzlement). *Thomas Organ* itself involved an admiralty case cargo loss where the carrier likely must conduct a business investigation to determine whether or not the claim will be denied. There will be some situations where there is some likelihood of litigation, but also a business purpose behind the investigation as in *McDougall v. Dunn,* 468 F.2d 468. In that case, the defendant insured drove the car off the road and the plaintiff passenger was injured. The court noted that the insurance adjuster obtained witness statements in the regular course of his duties, apparently considering that there would be a claim made by its insured. Further, the investigation of an industrial accident by a carrier can have a safety as well as a liability purpose. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 984.

In contrast to the above situations, in the instant case the accident did not just involve the insured's vehicle but rather another automobile in which the passengers were severely injured or killed, and where it was immediately apparent that the negligence, if any, would likely be solely with the insurance company's insured. *E.g., Basinger v. Glacier Carriers, Inc.,* 107 F.R.D. 771. In this latter

situation, the prospect of litigation is immediate and the purpose of the insurance investigation will likely be so focused. There is no reason to deny work product protection to investigation documents in these circumstances. Considering the affidavit from the insurance company adjuster and the nature of the case, it is determined that the insurance company obtained the witness reports in anticipation of litigation.

■ A finding of non-opinion work product protection does not end the matter because it can be overcome by a showing that a party has substantial need for the material and is unable to obtain the substantial equivalent by other means without undue hardship. A finding of substantial need involves consideration of two factors. The first is the nature of the documents (i.e., their relevance and importance), and the second is the ability to obtain the facts (or the substantial equivalent) from other sources. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 985. To constitute a "substantial" need, a strong showing of either factor in conjunction with the other is necessary.

■ Before claiming an inability to obtain the substantial equivalent of work product documents without undue hardship, a party can be required to take a deposition of a witness.[2] 8 Wright & Miller, *supra* § 2025 at 215. The reason for this is that while the work product document itself may be privileged, the facts underlying it are not. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 984 n. 5. Therefore, a witness may be interrogated at his deposition concerning the facts contained in the work product report, including the actual content of statements in the report. *United States v. I.B.M. Corp.,* 79 F.R.D. 378, 380 (S.D.N.Y. 1978). However, if a party or witness has no recollection of the events of the accident, this loss of memory constitutes an inability to obtain the substantial equivalent of the facts

in the report by other means. *Phillips v. Dallas Carriers Corp.,* 133 F.R.D. 475, 481 (M.D.N.C.1990) (citing *McDougall v. Dunn,* 468 F.2d 468 (4th Cir.1972)).

The substantial need test also requires a showing of the relevance and importance of the document. In this regard, contemporaneous statements made immediately after an accident constitute material of special relevance and importance. Because memory fades with time or changes after further reflection, contemporaneous statements have been deemed a unique catalyst in the search for truth. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 985.

### Thompson Statement

■ Turning to the dispute over the Thompson statement, plaintiffs face a unique factual circumstance in their endeavor to show substantial need. Here, Thompson claims to have a good memory of what occurred at the time of the accident. His memory loss concerns the unrecorded contemporaneous statement he gave to plaintiffs' attorney and the recorded one he gave to the insurance company adjuster. Therefore, arguably plaintiffs, by having Thompson's unrecorded contemporaneous statement and his present testimony of the accident events, have obtained the substantial equivalent of witness Thompson's recorded contemporaneous statement. However, plaintiffs contend to the contrary arguing that they still need the recorded statement for impeachment purposes in light of the unexpected mention of the other truck driver for the first time in the deposition. As determined below, this is a legitimate purpose and, therefore, there is no substantial equivalent to the document.[3]

■ The relevance and importance of a document, for purposes of the substantial need exception to work product protection,

---

2. A deposition can reveal whether a witness is hostile or reluctant to speak or whether there is some reason to believe the prior written statement conceals something or is inconsistent with a present contention. *Guilford National Bank of Greensboro v. Southern Ry. Co.,* 297 F.2d 921, 926 (4th Cir.1962).

3. It could be argued that Thompson's unrecorded statement to plaintiffs' attorney is the substantial equivalent. It is not because it was not recorded or signed and, therefore, its impeaching potential would require calling plaintiffs' counsel as a witness and perhaps disqualifying him from representing plaintiffs. This would be overly burdensome to plaintiffs.

can be established by showing the document is necessary for impeachment purposes or to prevent fraud or misuse of the Court. *In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir.1979); *Mason C. Day Excavating v. Lumbermens Mut. Cas.,* 143 F.R.D. 601, 606 (M.D.N.C.1992); 8 Wright & Miller, *supra* § 2025 at 226. Production of impeaching statements at trial is not a substitute for pretrial discovery. *McDougall v. Dunn,* 468 F.2d at 475. To obtain benefit of this rule, however, a party must present more than speculative or conclusory statements that the reports will contain invaluable impeachment material. And, the impeachment value must be substantial because every prior statement has some impeachment value and otherwise the exception would swallow the rule. *See Gay v. P.K. Lindsay Co., Inc.,* 666 F.2d 710, 713 (1st Cir.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982).

In the instant case, plaintiffs readily satisfy their burden of showing the importance of the statements for impeachment purposes. Here, Thompson claims to have a vivid memory of events surrounding the accident but no memory of contemporaneous statements given. This discrepancy itself raises a red flag concerning the veracity of this witness for purposes of impeachment and concerns over misuse of the Court. In addition, Thompson spoke to plaintiffs' attorney at around the time of the accident but made no mention of talking to the other truck driver. This serves as a good indication that he may not have mentioned the other driver in his talk with the insurance adjuster either. Thus, plaintiffs make a very specific showing that the contemporaneous statement may well contain valuable impeaching material concerning contemporaneous statements made or not made about the events of the accident. Therefore, plaintiff's motion will be granted as to Thompson's statement.

### Whitaker Statement

■ The Court next turns its attention to the contemporaneous statement given by de-fendant Julia Whitaker. She was deposed by plaintiffs and there is no showing that she could not remember either the events of the accident or the statement which she made to the insurance adjuster. However, she refused to give a contemporaneous statement to plaintiffs' attorney.

Plaintiffs argue that Julia Whitaker's memory is faulty concerning the events of the day of the accident. However, a review of portions of the transcript submitted by the parties does not show that there was a loss of memory resulting from the lapse of time as opposed to her never having cognition of certain events on the day of the accident. She could not remember how close traffic was in the rear, whether she altered the speed of her car during the last mile, what became of the tractor trailer that ran her off the road, nor does she remember anything once she went on the grass median. Plaintiffs did not ask Ms. Whitaker to relate the statement she made to the insurance adjuster. They only asked her whether her present recollection was different and she responded specifically with a minor correction. Therefore, because Ms. Whitaker can remember the events of the accident, plaintiffs would apparently have the substantial equivalent of her recorded statement. Moreover, plaintiffs fail to show that they have a need for Ms. Whitaker's statement for impeachment purposes. However, because the statement is the only contemporaneous statement of a direct witness of the accident,[4] and because only defendants have such a statement, the policy considerations behind Rule 26(b)(3) in favor of exposing relevant facts requires disclosure to the opposing side.

As indicated previously, contemporaneous witness statements have been touted as a unique catalyst in the search for truth in our judicial process. *National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d at 985; 8 Wright & Miller, *supra* § 2025 at 220–24.[5]

---

4. Defendants have not shown the Court that Julia Whitaker's statement to the Highway Patrol Officer constitutes the substantial equivalent to her statement given to the insurance adjuster.

5. The Thompson and Whitaker statements qualify as being contemporaneous inasmuch as they were made within a week or so of the accident. *Guilford National Bank of Greensboro v. Southern Ry. Co.,* 297 F.2d 921 (6–9 days). Statements made several weeks or a month after the event may not so qualify. *Basinger v. Glacier Carriers,*

In fact, the Advisory Committee Notes to the 1970 Amendments to Rule 26 suggest that an especially liberal disclosure attitude be adopted toward such statements. *McDougall v. Dunn*, 468 F.2d at 474. Also, disclosure of such unique statements will have the important side effect of providing a more realistic appraisal of a case by the parties thereby facilitating settlement prior to trial. *McDougall v. Dunn*, 468 F.2d at 474. These policy considerations require that both parties have access to contemporaneous statements. Thus, if both parties have roughly the same contemporaneous statements, discovery of the other side's will likely be denied. *McDougall v. Dunn*, 468 F.2d at 474; *Mason C. Day Excavating v. Lumbermens Mut. Cas.*, 143 F.R.D. at 606. On the other hand, where a party has been disabled from obtaining its own contemporaneous statements or where the parties do not have substantially the same access to such statements, these constitute reasons to require disclosure of contemporaneous statements. *McDougall v. Dunn*, 468 F.2d at 475; *Arkwright Mut. Ins. v. National Union Fire Ins.*, 148 F.R.D. 552, 555 (S.D.W.Va.1993) (on remand from *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980 (4th Cir. 1992)).

In the instant case, the only direct witness to the accident was defendant Julia Whitaker. Plaintiffs were not able to obtain her contemporaneous statement because she refused to meet with them. Therefore, plaintiffs cannot be accused of trying to freeload on defendants' work product.[6] Consequently, because defendants have the only contemporaneous statement of a direct witness, the Court finds that plaintiffs are not able to obtain the substantial equivalent even through deposition of defendant Julia Whitaker. Nor, in this instance, are plaintiffs required to make a showing of substantial probability that the witness report contains impeaching material. It is sufficient that the contemporaneous statement being both rele-

vant and important, constitutes the only such statement of a direct eyewitness. Therefore, plaintiffs are entitled to review the statement of Julia Whitaker.

**IT IS THEREFORE ORDERED** that defendants forthwith produce for review and inspection the contemporaneous statements of Alford T. Thompson and Julia Whitaker obtained by United States Fidelity & Guaranty Company shortly after the September 5, 1990 accident. Both sides shall bear their own costs.

*Inc.*, 107 F.R.D. 771, 774–75 (M.D.Pa.1985), and cases cited therein.

**6.** The facts of this case as to plaintiffs' diligence are even stronger than those in *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 481 (M.D.N.C. 1990). There, plaintiff's counsel failed to obtain

his own contemporaneous statement of a witness. This was excused because the witness was in fact a potential defendant who likely would be reluctant to speak and because plaintiff's and defendant's counsel were actively involved in trying to settle the case before an action was filed.